# EXHIBIT A

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| MONTGOMERY ROAD I LIMITED PARTNERSHIP 5301 Wisconsin Avenue, NW Suite 510 Washington, DC 20015 | ) ) ) ) ) |
| Plaintiff, | ) **06-0000542** ) |
| v. | ) Civil Action No.____ ) |
| VIAD CORP 1850 North Central Avenue Phoenix, AZ 85077 | ) ) ) ) |
| SERVE: CT Corporation System 1015 15th Street, NW Suite 1000 Washington, DC 20005 | ) ) ) ) ) ) ) |
| Defendant. | ) |

RECEIVED
Civil Clerk's Office
JAN 2 7 2006
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Montgomery Road I Limited Partnership, by and through its undersigned counsel, Cooter, Mangold, Tompert, and Karas, L.L.P., hereby files this Complaint for Declaratory Judgment against Defendant VIAD Corp., and as grounds therefor states as follows:

### JURISDICTION AND VENUE

1. This Court has personal jurisdiction in this matter pursuant to D.C. Code §§ 13-423(a)(1) and (a)(5) in that

Defendant transacts business in the District of Columbia and has an interest in, uses, or possesses real property in the District of Columbia.

2. Venue properly rests in this Court in that the real property that is the underlying subject matter of the contract at issue lies in the District of Columbia.

## PARTIES

3. Plaintiff Montgomery Road I Limited Partnership ("MRLP" or the "Developer") is a Maryland limited partnership formed for the purpose of owning real property. MRLP owns the property located at First and K Streets, N.E. ("90 K Street" or "the Property"). Stewart J. Greenebaum and Samuel G. Rose are two of the limited partners of MRLP.

4. Defendant VIAD Corporation is a Delaware corporation and the parent company and successor in interest to Transportation Leasing Company ("TLC"), a California corporation whose assets are now liquidated, and the former owner of the 90 K Street property.

## STATEMENT OF FACTS

5. On or about December 9, 1987, Plaintiff purchased the 90 K Street NE property from TLC for approximately $11 million dollars. In connection with this sale, Plaintiff and TLC also executed a "Cash Participation Agreement" (the "CPA"), which contemplated that under certain circumstances TLC would receive

15% of any cash flow generated by the operation of the property ("Operations Cash Flow") or 15% of the net proceeds generated by the sale, disposition, or refinancing of the property ("Appreciation Cash Flow").

6.   The intent of the CPA, which was drafted by attorneys for TLC, was to provide the Developer with a complete return of and return on its investment – including a return on its equity, and a payoff of all debt, including interest – before TLC was permitted any participation in Appreciation Cash Flow.  The CPA also gave TLC the right of first refusal to purchase the Property. TLC's interest in the property was secured by a Deed of Trust recorded on December 10, 1987 in the land records of the District of Columbia.

7.   At the time of the acquisition of the 90 K Street property by Plaintiff in 1987, a mortgage for $10.3 million was placed on the property with Yorkridge-Calvert Savings and Loan, a local S&L.  In March 1989, a second mortgage in the amount of approximately $1.5 million was placed on the Property with the same S&L to fund operating deficits.  Plaintiff paid interest on both loans on an ongoing basis and the limited partners, Greenebaum and Rose, also personally guaranteed the loans.

8.   In 1990, Yorkridge-Calvert encountered financial difficulties and came under the control of the Resolution Trust Company (the "RTC").  As a result, Plaintiff was required to and

did pay off the $1.5 million second trust. The RTC then sold the first mortgage to Sun Chase Bank of Phoenix. Plaintiff continued to pay interest on that loan until 1996 when S&S Finance Limited Partnership, Plaintiff's affiliate, acquired the note from Sun Chase.

9. The Plaintiff and TLC amended the CPA in 1989, effective retroactively as of December 9, 1987, to revise the definition of "Senior Mortgage" in Section 1.39 to clarify that mortgages and deeds of trust executed after the initial loan closing for specified purposes would be superior to TLC's interest. Specifically, the amendment was executed to make clear that debts incurred to fund carrying costs (such as the $1.5 million second mortgage) would be senior to TLC's interest.

10. In April 1996, S&S Finance, a wholly-owned affiliate of Plaintiff's Limited Partners, Greenebaum and Rose, purchased from Sun Chase Bank the mortgage on 90 K Street for approximately $9.3 million. Section 2.3 (b) of the CPA, "Permitted Debt," provides that debt can be acquired by a related company so long as it charges interest at or below the rates charged by other financial institutions in similar real estate loans. From 1996 to date, S&S Finance has charged the Property a below market rate of interest, namely 1.5% over prime. S&S Finance continues to hold the first mortgage on the Property, and a Deed of Trust securing its position is recorded in the land records of the District of

Columbia.

11. In 1997, Plaintiff's accountants reclassified approximately $7.3 million of the first mortgage debt to equity, for tax reasons. Specifically, for the purposes of the Special Purpose Financial Statements required by the CPA, $7.3 million of the loan held by S&S Finance was classified as Developer's Invested Equity. This reclassification of debt to equity also caused the annual interest on the debt to be included under the heading "Developer's Equity Return" instead of under "Developer's Operating Equity." These financial statements were supplied annually to TLC and clearly showed these accounting treatments in compliance with the CPA, yet TLC never questioned the statements or the categorization of any financial items within them until a potential sale of the property was contemplated in 2000.

12. At the time it was acquired, the 90 K Street property was, and remains, a vacant lot. Apparently believing its interest in the Property to have little if any value, in 1999, after receipt and review of more than twelve years of financial statements, TLC offered to relinquish all of its rights in the Property under the CPA, including its right of first refusal, for $25,000. The parties were unable to reach an agreement on the value of TLC's interest, and no settlement of the matter was ever executed.

13.    On or about June 26, 2000, Plaintiff notified TLC of a
pending sale of the Property pursuant to Section 4.1 of the CPA.
As stated in the notice, the sale price of the Property was
$24,975,000 with expected net proceeds of approximately $23
million.   Plaintiff calculated its cost basis on the property,
including the Developer's Invested Equity, Developer's Operating
Equity, and Developer's Equity Return to be in excess of
$27,000,000. As a result, there would be no positive cash flow
from the sales transaction.   As part of this pending transaction,
however, Plaintiff sought to resolve any outstanding title issues
created by the CPA including obtaining from TLC a waiver of its
right of first refusal and the release of any lien on the
property, for which Plaintiff offered to compensate TLC in the
amount of $10,000.00.

14.    In response, in August 2000, TLC claimed for the first
time that Plaintiff had overstated the amount of Developer's
equity that could be subtracted in calculating the Appreciation
Cash Flow and that, if the pending sale took place, TLC would be
entitled to a substantial six-figure Cash Appreciation Payment.
Specifically, TLC claimed that under the definition of
"Appreciation Cash Flow" in Section 3.1 of the CPA, the category
"Developer's Equity Return" was not a permitted subtraction.

15.    TLC also questioned whether the acquisition of the
first mortgage by Plaintiff's affiliate, S&S Finance, was a

6

"Refinancing" under Section 3.2(b) of the CPA, which would have triggered a disclosure by Plaintiff and an analysis of whether a Cash Appreciation Payment was due to TLC. TLC also raised concerns regarding Plaintiff's classifications of debt and equity.

16. On or about November 30, 2000, TLC was liquidated and the Cash Participation Agreement and accompanying deed of trust relating to the 90 K Street property were assigned to Defendant VIAD Corporation, TLC's parent corporation.

17. For reasons unrelated to this lawsuit, the proposed 2000 sale of the 90 K Street property did not take place. Nevertheless, the dispute between the parties remained concerning the meaning and application of certain terms of the CPA. In 2005, Plaintiff and VIAD agreed to seek a resolution of the dispute by submitting the matter to an independent accounting firm for review. Specifically, the parties sought the interpretation, analysis, and application of certain terms of the CPA. In addition, the parties asked the independent accountants to analyze the classification of certain costs and charges, and prepare a pro-forma calculation under the CPA for the hypothetical sale of the Property.

18. Pursuant to Section 2.7 of the CPA, Defendant VIAD was permitted to select the independent accountants, and it chose the Reznick Group of Bethesda, Maryland. Plaintiff paid the full

7

costs of the independent review.

    19.  Both parties were permitted to, and did, submit position papers and any relevant materials.  On March 2, 2005, Defendant VIAD submitted its position paper plus nine related exhibits. In an accompanying cover letter VIAD noted, contrary to the prior understanding between the parties, that neither VIAD nor TLC would be bound by the opinion rendered. Plaintiff submitted its position paper on March 30, 2005.

    20.  In addition to the parties' position papers, the Reznick Group reviewed and analyzed the CPA, the 1989 First Amendment thereto, and the Special Purpose Financial Statements for the years 2002 and 2003.  On April 10, 2005 the Reznick Group rendered its opinion, which found in favor of Plaintiff on five of the six issues submitted to them. The Reznick Group also determined that as of 12/31/2003, the 90 K Street property would have to command a selling price in excess of $37.8 million for VIAD to be entitled to any Cash Appreciation Payment under the terms of the CPA.

    21.  Defendant VIAD has rejected the Reznick opinion, including the finding in its favor, and maintains that the Reznick opinion is not binding.

**COUNT I**
**Declaratory Judgment**

    22.  Plaintiff realleges and incorporates by reference the facts and allegations set forth in Paragraphs 1 - 21 above.

8

23.  For nearly 19 years, Plaintiff has paid all of the real estate taxes, interest and other payments on the property, and has managed and marketed the 90 K Street property at a substantial loss. Plaintiff has funded these costs and operating deficits with no contribution from Defendant VIAD or its predecessor TLC.

24.  In addition, over the years Plaintiff has provided TLC and VIAD with detailed annual Special Purpose Financial Statements for the Property, and these Special Purpose Financial Statements have documented the operational losses incurred by Plaintiff and the increase in Plaintiff's equity position in the Property.  Until the potential sale of the Property in 2000, neither TLC nor VIAD ever questioned the Special Purpose Financial Statements or the accounting methods used by Plaintiff.

25.  When Defendant VIAD did raise certain questions concerning the accounting methods used, Plaintiff submitted the dispute concerning the terms of the CPA (an agreement drafted by attorneys for TLC) to the accounting firm selected by Defendant, and paid the cost of that dispute resolution.  Nevertheless, Defendant VIAD  refuses to be bound by the results.

26.  This disagreement between the parties has dragged on for more than five years, and Plaintiff has a strong interest in resolving it.  Both of Plaintiff's Limited Partners, Greenebaum and Rose, are nearing retirement age, and wish to remove any

9

cloud on the title to the 90 K Street Property while they are still actively involved in the business. Accordingly, Plaintiff seeks a Declaratory Judgment that the following findings of the independent accountants are valid, binding, and enforceable as to Defendant VIAD and its predecessor, TLC:

a) It is proper to deduct Developer's Equity Return in computing Appreciation Cash Flow by including the annual Developer's Equity Return as an allowable incurred Expense under Section 2.3 in computing Operations Cash Flow that is effectively paid from and increases Developer's Operating Equity. Developer's Operating Equity is then treated as a deduction in computing Appreciation Cash Flow under Section 3.1. (Issue 1)

b) The 1996 acquisition of the first mortgage debt by S&S Finance, which is owned by Plaintiff's Limited Partners, Greenebaum and Rose, was not a "refinancing" that should have triggered a Cash Appreciation Payment under Section 3.3(c). (Issue 2)

c) Any amount advanced by S&S Finance or its partners to pay interest or any other reasonable expense should be treated as if it were made from an

Equity Holder and included in Developer's

Operating Equity under Section 3.6(b). (Issue 3)

d)  There is no substance or effect on the

computations for Operations Cash Flow, or

Developer's Operating Equity, between a cash

payment for interest on the first mortgage and a

non-cash charge for interest that satisfies MRLP's

obligation for interest due.  (Issue 4)

e)  For financial purposes and computations under the

Cash Participation Agreement, the first mortgage

(held by S&S Finance) was reclassified as equity.

The first mortgage should be classified as debt,

and this debt would qualify as Permitted Debt

under the CPA.  (Issue 5)

f)  The 1996 acquisition of the first mortgage by S&S

Finance occurred at a $1,024,571 discount to the

outstanding loan balance.  For the purpose of

determining what type of accounting, if any, this

transaction should receive for the purpose of

computations under the CPA, interest on the first

mortgage should only be charged on the amount

actually paid by S&S Finance to acquire the first

mortgage.  The discount on the mortgage would be

considered an unreasonable related party fee if

11

not passed on to the Partnership (Section 2.3(b)
and Section 3.7).   (Issue 6)


Wherefore, Plaintiff seeks a Declaratory Judgment that the
above findings of the independent accountants as to the 90 K Street
Property are valid, binding, and enforceable as to Defendant VIAD
and its predecessor, TLC, and for such other and further relief as
this Court shall deem just and proper.

Respectfully submitted,

Cooter, Mangold, Tompert &
Karas, L.L.P.

Dale A. Cooter, #227454
Donna S. Mangold, #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, DC 20015
(202)537-0700

12

CA Form 1

# Superior Court of the District of Columbia

## CIVIL DIVISION

### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

MONTGOMERY ROAD I LIMITED
PARTNERSHIP                      *Plaintiff*

vs.

VIAD CORP                        *Defendant*

06-0000542

Civil Action No. _____

SERVE:  CT Corporation System
        1015 15th Street, NW
        Suite 1000
        Washington, DC 20005

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

DALE A. COOTER
Name of Plaintiff's Attorney

5301 WISCONSIN AVENUE, SUITE 500          By _____
Address                                        Deputy Clerk
WASHINGTON, DC 20015

202-537-0700                              Date _____
Telephone

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

CV(6)-456/May 03

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I LIMITED PARTNERSHIP<br><br>                    Plaintiff,<br><br>         v.<br><br>VIAD CORP<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No._____ |

## JURY DEMAND

Plaintiff Montgomery Road I Limited Partnership, by and through its undersigned counsel, Cooter, Mangold, Tompert & Karas, L.L.P., hereby demands a trial by jury on all issues in its Complaint for Declaratory Judgment, filed herewith.

Respectfully submitted,

Cooter, Mangold, Tompert & Karas, L.L.P.

Dale A. Cooter, #227454
Donna S. Mangold, #358851
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, DC 20015
(202)537-0700



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

MONTGOMERY ROAD I LIMITED PARTNERSHIP
  Vs.                                                    C.A. No.        2006 CA 000542 B
VIAD CORP

### INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge GERALD I FISHER
Date:  January 27, 2006
Initial Conference: 9:30 am, Friday, May 05, 2006
Location:   Courtroom A-50
            515 5th Street N.W.
            WASHINGTON, DC  20001

Caio.doc

# Superior Court of the District of Columbia
## CIVIL DIVISION — CIVIL ACTIONS BRANCH

### INFORMATION SHEET

| MONTGOMERY ROAD I LIMITED PARTNERSHIP |
|---|

vs.

| VIAD CORP |
|---|

Case Number: [          ]

Date: [JANUARY 27, 2006]

Name:
| DALE A. COOTER |
|---|

Firm Name:
| COOTER MANGOLD TOMPERT & KARAS, L.L.P. |
|---|

Telephone No.: [202-537-0700]    Unified Bar No.: [227454]

Relationship to Lawsuit
- ● Attorney for Plaintiff
- ○ Self (Pro Se)

Other: [          ]

TYPE OF CASE:   ○ Non-Jury    ⊗ 6 Person Jury    ○ 12 Person Jury

Demand: $ [          ]    Other: [DECLARATORY JUDGMENT]

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**

Case No. [          ]  Judge [          ]  Calendar # [          ]

Case No. [          ]  Judge [          ]  Calendar # [          ]

**NATURE OF SUIT:**  *(Check One Box Only)*

**A. CONTRACTS**
- ☐ 01 Breach of Contract
- ☐ 02 Breach of Warranty
- ☐ 06 Negotiable Instrument
- ☐ 15 Other:
- ☐ 07 Personal Property
- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance

**COLLECTION CASES**
- ☐ 14 Under $25,000 Pltf. Grants Consent
- ☐ 16 Under $25,000 Consent Denied
- ☐ 17 OVER $25,000

**B. PROPERTY TORTS**
- ☐ 01 Automobile
- ☐ 02 Conversion
- ☐ 07 Shoplifting, D.C. Code § 3441
- ☐ 03 Destruction of Private Property
- ☐ 04 Property Damage
- ☐ 05 Trespass
- ☐ 06 Other:

**C. PERSONAL TORTS**
- ☐ 01 Abuse of Process
- ☐ 02 Alienation of Affection
- ☐ 03 Assault and Battery
- ☐ 04 Automobile
- ☐ 05 Deceit (Misrepresentation)
- ☐ 06 False Accusation
- ☐ 07 False Arrest
- ☐ 08 Fraud
- ☐ 09 Harassment
- ☐ 10 Invasion of Privacy
- ☐ 11 Libel and Slander
- ☐ 12 Malicious Interference
- ☐ 13 Malicious Prosecution
- ☐ 14 Malpractice Legal
- ☐ 15 Malpractice Medical
- ☐ 16 Negligence
- ☐ 17 Personal Injury
- ☐ 18 Wrongful Death
- ☐ 19 Wrongful Eviction
- ☐ 20 Other:
- ☐ 21 Asbestos
- ☐ 22 Toxic/Mass Torts

**D.  OTHERS**

**I.**
- ☐ 01  Accounting
- ☐ 02  Att. Before Judgment
- ☐ 04  Condemnation (Emin. Domain)
- ☐ 05  Ejectment
- ☐ **07  Insurance/Subrogation Under $25,000  Pltf. Grants Consent**
- ☐ 08  Quiet Title
- ☐ 09  Special Writ (Specify)

- ☐ 10  T.R.O./Injunction
- ☐ 11  Writ of Replevin
- ☐ 12  Enforce Mechanics Lien
- ☑ 16  Declaratory Judgment
- ☐ 17  Merit Personnel Act (D.C. Code Title 1, Chapter 6)
- ☐ 18  Product Liability
- ☐ 24  Application to Confirm, Modify, Vacate Arbitration Award (D.C. Code 164315)

- ☐ 25  Other:
- ☐ **26  Insurance/Subrogation Under $25,000  Consent Denied**
- ☐ **27  Insurance/Subrogation Over $25,000**

**II.**
- ☐ 03  Change of Name
- ☐ 06  Foreign Judgment
- ☐ 13  Correction of Birth Certificate
- ☐ 14  Correction of Marriage Certificate

- ☐ 15  Libel of Information
- ☐ 19  Enter Administrative Order as Judgment [6-2713(h) or 36-3 19(a)]
- ☐ 20  Master Meter (D.C. Code 43-541, et seq.)

- ☐ 21  Petition for Subpoena [Rule 28-l(b)]
- ☐ 22  Release Mechanics Lien
- 23  Rule 27 (a)(l) (Perpetuate Testimony)

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I | ) |
| LIMITED PARTNERSHIP | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No. 06CA 000542B |
| | )Judge Fisher |
| VIAD CORP | )Next Court Event: |
| | ) Initial Conference: 5/5/06 |
| Defendant. | ) |
| | ) |

<u>PLAINTIFF'S INTERROGATORIES TO DEFENDANT VIAD</u>

Plaintiff Montgomery Road I Limited Partnership ("Plaintiff"), by and through its undersigned counsel, and pursuant to Rule 33 of the Rules of the Superior Court of the District of Columbia, hereby requests that Defendant VIAD Corp ("Defendant") answer each of the interrogatories set forth herein separately, fully, in writing, under oath within forty-five (45) days of the service of the Summons and Complaint in this matter.

I.   <u>DEFINITIONS AND INSTRUCTIONS</u>

   A.   For purposes of this request, the following definitions shall apply:

      1.   "VIAD" shall mean VIAD Corp and/or any of its affiliates or subsidiaries.

      2.   "TLC" shall mean Transportation Leasing Company and/or its predecessor, Greyhound Co. and/or any of their

1

affiliates or subsidiaries.

      3.   "MRLP" or "the Developer" shall mean the Montgomery Road I Limited Partnership and/or its principals, Stewart Greenebaum and Samuel Rose.

      4.   "90 K Street" or "the Property" shall mean the property located at First Street and K Street NE, Washington D.C.

      5.   "Cash Participation Agreement" or "the CPA" shall mean the Agreement executed by Plaintiff and TLC on or about December 9, 1987, in connection with Plaintiff's purchase of the 90 K Street property.

      6.   The "Reznick Opinion" shall mean the independent business and accounting analysis performed by the Reznick Group. P.C, Bethesda, Maryland,  as memorialized in an April 10, 2005 letter to Samuel G. Rose.

      7.   The term "document" shall be construed in the broadest sense permissible under the Rules of Civil Procedure for the Superior Court of the District of Columbia and means the original, all copies and all translations of any writing and any written, recorded or graphic material, whether typed, handwritten, printed or otherwise and any photograph, photostat, microfilm or other reproduction thereof including, without limitation, each note, memorandum, brief, pleading, motion, letter, telegram, telex, circular, release, article, report, prospectus, memorandum of telephone or personal conversation,

2

record, financial statement, analysis, chart, account, book, draft, summary, diary, transcript, agreement, computer printout, contract, order, any tape or audible recording, and any nonidentical copy of any document which differs from any other copy thereof, either by virtue of other material appearing thereon, such as handwriting, or typewriting, or otherwise.

8. "Communication" means any writing, electronic communication, telephone conversation, or oral conversation.

9. "Meeting" refers to any assembly, convocation, encounter, or contemporaneous presence of two or more persons.

10. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving, acting, or being in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves, acts, or is in such capacity.

11. "Person" shall include any natural person, corporation (private or governmental), syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, whether or not still alive or in existence.

12. "You" or "your" refers to the person or persons answering these interrogatories on behalf of Defendant VIAD Corp.

3

and/or any of its affiliates, subsidiaries, or predecessors in interest including, without limitation, TLC, and their officers, directors, employees, agents or attorneys.

B.   In order to bring within the scope of these Interrogatories all information and documentation that might otherwise be construed to be outside their scope, the following instructions apply:

   1.   The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (i.e., "ing," "ed," etc.) shall be construed to include each other;

   2.   "and" as well as "or" shall be construed both conjunctively as well as disjunctively;

   3.   "each" shall be construed to include "every" and vice versa;

   4.   "any" shall be construed to include "all" and vice versa;

   5.   the present tense shall be construed to include the past tense and vice versa;

   6.   the masculine shall be construed to include the feminine and vice versa;

   7.   "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys;

4

8. "include" shall have its ordinary meaning and shall not indicate limitation to the examples or items mentioned;

9. in general, all terms used herein shall be construed in an ordinary, common sense manner, and not in a technical, strained, overly literal, or otherwise restrictive manner.

10. When knowledge or information in possession of Defendant is requested, such request includes:

a. knowledge of Defendant's agents, representatives, experts and all persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this action and, unless privileged, including Defendant's attorneys.

b. With respect to any answer or portion of any answer to any of the following interrogatories not made on present knowledge of the person signing and swearing to such answer, identify each person from whom information was obtained on which such answer or part thereof was based.

c. To the extent that Defendant considers any of the following interrogatories objectionable, it should answer or respond to so much of each interrogatory and each part thereof as it deems to be not objectionable, and Defendant should separately state that part of each interrogatory as to which it raises objection and explicitly set forth each ground for each such

5

objection.

d.  If Defendant objects to any interrogatory or any part thereof on the claim of privilege, it should identify each statement for which the privilege is claimed together with the following information with respect to each such statement: (1) date, (2) names of persons present, and (3) the basis upon which the privilege is claimed.

C.  These interrogatories are considered to be continuing in character.  Accordingly, Defendant is required to file supplementary answers if it obtains additional information responsive to these Interrogatories.

II.  <u>INTERROGATORIES</u>

<u>Interrogatory No. 1</u>:  State your involvement in the investigation of the facts of this case, state what you did to investigate the answers to these interrogatories, and identify all persons you spoke with in preparing these answers.

<u>Interrogatory No. 2</u>:  Identify all documents that in any way describe, comment upon, discuss, reflect, mention, refer or relate to any aspect of the financial condition or performance of the 90 K Street property during the time that it was owned by TLC.

<u>Interrogatory No. 3</u>:  Identify all documents that in any way describe, comment upon, discuss, reflect, mention, refer or

relate to any aspect of the financial condition or performance of the 90 K Street property from December 8, 1987 to the present.

Interrogatory No. 4:  Identify all documents that in any way describe, comment upon, discuss, reflect, mention, refer or relate to any examination by TLC or VIAD of the financial statements, records, operations, or audits of the 90 K Street Property.

Interrogatory No. 5:  Identify any and all persons with knowledge of any facts supporting VIAD's defense of the allegations in the Complaint for Declaratory Judgment  filed on behalf of MRLP.

Interrogatory No. 6:  Identify any and all persons who examined or reviewed the Special Purpose Financial Statements, or any other financial statements or records,  provided by MRLP concerning the 90 K Street property from 1987 to the present.

Interrogatory No. 7:  Identify any and all persons who provided you with advice and/or representation  or participated in the negotiations culminating in sale of the 90 K Street property from TLC to MRLP in December 1987.

Interrogatory No. 8:  Identify any and all persons who provided you with advice and/or representation  or participated in discussions concerning  the proposed sale  in August 2000 of the 90 K Street property by MRLP to Level 3.

Interrogatory No. 9:  Identify any and all persons who

7

provided you with advice and/or representation or participated in discussions concerning the disagreement with MRLP over the interpretation of the terms of Cash Participation Agreement, including without limitation, the preparation of the March 2, 2005 "Statement of TLC's Position" and exhibits thereto.

Interrogatory No. 10: For each year from 1987 through 2006, explain how you treated, characterized or categorized in your internal records any interest held by TLC or VIAD in the 90 K Street property including without limitation any interest allegedly arising from the terms of the Cash Participation Agreement, and identify each and every document that reflects such treatment, characterization or categorization.

Interrogatory No. 11: Identify all of the documents, books, records and notices, minutes of meetings, and resolutions maintained by you regarding the sale of the 90 K Street Property to MRLP.

Interrogatory No. 12: Identify all of the documents, books, records and notices, minutes of meetings, and resolutions maintained by you regarding any interest held by TLC or VIAD in the 90 K Street property, including without limitation any interest allegedly arising under the terms of the Cash Participation Agreement.

Interrogatory No. 13: Identify all of the documents, books, records and notices, minutes of meetings, and resolutions

8

maintained by you regarding the proposed sale in August 2000 of the 90 K Street property by MRLP to Level 3.

Interrogatory No. 14: Identify all of the documents, books, records and notices, minutes of meetings, and resolutions maintained by you regarding discussions about the dispute with MRLP concerning the terms of the Cash Participation Agreement, and the preparation of the March 2, 2005 "Statement of TLC's Position" and accompanying exhibits for submission to an independent accounting firm.

Interrogatory No. 15: Explain the decision by TLC in 1999 to make an offer to relinquish all of its rights in the 90 K Street Property, including its right of first refusal, for $25,000, and identify the person or persons who made that decision.

Interrogatory No. 16: Identify the person or persons who drafted the Cash Participation Agreement and identify all information relied upon in defining its terms.

Interrogatory No. 17: Identify the person or persons who authored the March 2, 2005 "Statement of TLC's Position" including exhibits, and identify all information relied upon in the preparation of those documents.

Interrogatory No. 18: Describe in detail any and all communications, whether oral, electronic, or written, between any of your employees, agents, or representatives concerning the

9

sale of the 90 K Street property to MRLP including without limitation the drafting, negotiation or execution of the Cash Participation Agreement.

Interrogatory No. 19: Describe in detail any and all communications, whether oral, electronic, or written, between any of your employees, agents, or representatives concerning the 1999 offer by TLC to relinquish all of it rights in the 90 K Street Property, including its right of first refusal, for $25,000.

Interrogatory No. 20: Describe in detail any and all communications, whether oral, electronic, or written, between any of your employees, agents, or representatives concerning the proposed sale in August 2000 of the 90 K Street property by MRLP to Level 3.

Interrogatory No. 21: Describe in detail any and all communications, whether oral, electronic, or written, between any of your employees, agents, or representatives concerning the drafting, preparation or production of the March 2, 2005 "Statement of TLC's Position" including exhibits.

Interrogatory No. 22: Explain the basis for, and identify all of the information relied on, including without limitation any and all relevant documents, in setting forth your position on each of the seven issues described on pages 4 and 5 of VIAD's March 2, 2005 "Statement of TLC's Position".

10

Interrogatory No. 23:    Explain the basis for, and identify
the person responsible for selecting  the Reznick Group, P.C. to
perform the independent review of the terms of the Cash
Participation Agreement in 2005, and  identify all documents that
evidence any and all information relating to that decision, and
identify all persons with knowledge thereof.

Interrogatory No. 24:    Explain the basis for, and identify
all of the information relied on, in  page 5 of its March 2, 2005
"Statement of TLC's Position,"  in VIAD's characterization of the
independent review as "the dispute resolution process" and its
reference to the Reznick Group as ""the arbitrator of these
disputes."

Interrogatory No. 25:    Explain the basis for, and identify
all of the information relied on in VIAD's  decision to reject
the April 10, 2005  opinion  and analysis of the Reznick Group,
and  identify all documents that evidence any and all information
relating to that decision and identify all persons with knowledge
thereof.

Interrogatory No. 26:    Describe all policies in effect
from 1987 to 2006 at TLC and VIAD concerning document retention,
identify all documents that evidence such policies and identify
all persons with knowledge thereof

Interrogatory No. 27:    Describe in detail any and all
communications, whether oral, electronic,  or written, between

11

any of your employees, agents, or representatives concerning the decision to reject the April 10, 2005 opinion and analysis of the Reznick Group, and identify all documents that evidence any and all information relating to those communications and identify all persons with knowledge thereof.

Interrogatory No. 28: Identify all communications between TLC and VIAD concerning the liquidation of TLC in November 2000, and VIAD's assumption of TLC's interest in the Cash Participation Agreement with MRLP, including without limitation any discussion of the terms of the CPA or TLC's relationship with MRLP or its principals, and identify all documents that evidence any and all information relating to those communications and identify all persons with knowledge thereof.

January 27, 2006

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
& KARAS, LLP

Dale A. Cooter
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC    20015
Tel: (202) 537-0700

12

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I<br>LIMITED PARTNERSHIP<br><br>           Plaintiff,<br><br>   v.<br><br>VIAD CORP<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 06CA 000542B<br>) Judge Fisher<br>) Next Court Event:<br>) Initial Conference: 5/5/06<br>)<br>) |

**PLAINTIFF MONTGOMERY ROAD I LIMITED PARTNERSHIP'S**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO VIAD CORP**

Plaintiff Montgomery Road I Limited Partnership
("Plaintiff"), by and through its undersigned counsel, and
pursuant to Rule 34 of the Rules of Civil Procedure for the
Superior Court of the District of Columbia, hereby submits the
following request for production of documents and requests that
the Defendant VIAD Corp produce and permit inspection and copying
of the documents identified below in accordance with this
request.

I.   DEFINITIONS AND INSTRUCTIONS

    A.   For purposes of this request, the following definitions
shall apply:

    1.   "VIAD" shall mean VIAD Corp and/or any of its
affiliates or subsidiaries including without limitation
Transportation Leasing Company.

2.   "TLC" shall mean Transportation Leasing Company and/or its predecessor, Greyhound Co. and/or any of their affiliates or subsidiaries.

3.   "MRLP" or "the Developer" shall mean the Montgomery Road I Limited Partnership and/or its General Partners, Stewart Greenebaum and Samuel Rose.

4.   "90 K Street" or "the Property" shall mean the property located at First Street and K Street NE, Washington D.C.

5.   "Cash Participation Agreement" or "the CPA" shall mean the Agreement executed by Plaintiff and TLC on or about December 9, 1987, in connection with Plaintiff's purchase of the 90 K Street property.

6.   The "Reznick Opinion" shall mean the independent business and accounting analysis performed by the Reznick Group. P.C, Bethesda, Maryland, as memorialized in an April 10, 2005 letter to Samuel G. Rose.

7.   "Document" shall be construed in the broadest sense permissible under Rule 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, e-mail, computer storage devices, or any other medium

in the possession, custody, or control of the United States.

8.  "You" or "your" refers to the person or persons responding to the Requests on behalf of Defendant VIAD Corp and/or any of its affiliates, subsidiaries, or predecessors in interest including, without limitation, TLC, and their officers, directors, employees, agents or attorneys.

9.  "In the possession, custody, or control of VIAD" includes documents or materials in the possession, custody, or control of any current or former employees, agents, officials, representatives, attorneys, officers or directors of VIAD or its affiliates or subsidiaries including, without limitation, TLC, and their agents, representatives, officers, directors, employees, officials, and attorneys.

10.  "Communication" means any writing, electronic communication, telephone conversation, or oral conversation.

11.  "Meeting" refers to any assembly, convocation, encounter, or contemporaneous presence of two or more persons.

12.  "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving, acting, or being in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves, acts, or is in such capacity.

13.  "Person" shall include any natural person,

3

corporation (private or governmental), syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, whether or not still alive or in existence.

B.  In order to bring within the scope of these Requests all information and documentation that might otherwise be construed to be outside their scope:

1.  The singular of each word shall be construed to include its plural and vice versa, and the root word and all derivations (i.e., "ing," "ed," etc.) Shall be construed to include each other;

2.  "and" as well as "or" shall be construed both conjunctively as well as disjunctively

3.  "each" shall be construed to include "every" and vice versa;

4.  "any" shall be construed to include "all" and vice versa;

5.  the present tense shall be construed to include the past tense and vice versa;

6.  the masculine shall be construed to include the feminine and vice versa;

7.  "knowledge," "information," "possession," "custody," and "control" of a person shall be construed to include such person's agents, representatives, and attorneys;

8.  "include" shall have its ordinary meaning and shall not indicate limitation to the examples or items mentioned;

9.  in general, all terms used herein shall be construed in an ordinary, common sense manner, and not in a technical, strained, overly-literal, or

4

otherwise restrictive manner.

C.  Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be presented during business hours and upon appropriate notice, to any attorney representing Plaintiff in the above-captioned action, at the offices of Cooter, Mangold, Tompert and Karas, L.L.P., 5301 Wisconsin Avenue, NW, Suite 500, Washington, D.C. 20015, within the time provided in Rule 34, or at such other time or place as may be agreed upon by Plaintiff and VIAD, for purposes of inspection and copying in accordance with Rule 34. Each request to produce a document includes documents which are in any way in the possession, custody or control of VIAD or any of its attorneys, or to which any of its attorneys have access. If a requested document was, but no longer is, in the possession, custody, or control of VIAD, please identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known locations and custodians of the document, and explain the circumstances under which the document left the possession, custody or control of VIAD.

D.   These Requests are continuing in nature so as to require you to submit supplementary responses if further documents are found.

E.   If you believe that any of the following request for

5

production of documents call for the assertion of a claim of privilege, please produce so much of the document(s) as is not objected to, and set forth, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege (e.g., attorney-client, work product, etc.) and the basis for your claim.   For each document or part of a document as to which you claim privilege, state:

     1.   The date thereof;

     2.   The type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

     3.   The name of the person or persons who prepared or signed the document;

     4.   The name and positions of any intended and actual recipients of the document

     5.   Each person now in possession of the original or a copy of the document;

     6.   The nature of the privilege being claimed and any facts relevant to      the claim; and

     7.   The number of the request to which the document is responsive.

     F.   If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.   In the event that you object to any request on the basis that it is over broad for any reason, please respond to that request as narrowed in such a way as to render it not over

6

broad in your opinion, and state the extent to which you have narrowed that request for purposes of your response.

G.   If there are no documents responsive to a request, please so state.

H.   Each definition or instruction above shall be fully applicable to each document request, notwithstanding that a definition or instruction may, in whole or in part, be reiterated in a particular document request or that a particular document request may incorporate supplemental instructions or definitions.

I.   If you contend that you have previously provided any document(s) requested, identify with particularity the document, including without limitation, the date it was produced, to whom, the box, container, or file in which it was produced, and its date, author, addressees, and title.

## II.   DOCUMENT REQUESTS

In accordance with the above instruction and definitions, please produce all documents responsive to the requests set forth on the following pages:

1.   All documents identified in the Answers to the Plaintiffs' Interrogatories to Defendant VIAD served in conjunction with the Summons and Complaint in this matter.

2.   All documents that in any way describe, discuss, reflect, mention, refer or relate to the acquisition by TLC of

7

the 90 K Street property.

3.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the sale of the 90 K Street property to MRLP in December 1987.

4.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the financial condition, valuation, or performance of the 90 K Street property during the time it was owned by TLC.

5.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the financial condition, valuation, or performance of the 90 K Street property from December 9, 1987 to the present.

6.  All documents that in any way describe, discuss, reflect, mention, refer or relate to any examination or analysis by TLC or VIAD of the financial statements, records, operations or audits of the 90 K Street property from December 9, 1987 to the present.

7.  All documents that in any way describe, discuss, reflect, mention, refer or relate to any discussions, negotiations, or meetings between representatives of TLC or VIAD and MRLP in connection with MRLP's purchase of the 90 K Street property in 1987.

8.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the December 9,1987 Cash

Participation Agreement including without limitation all documents concerning the drafting of the terms of the Cash Participation Agreement.

9. All minutes, notes from, and/or transcripts of all meetings in which the Cash Participation Agreement was discussed, including without limitation, any discussion of the meaning of or reasons for inclusion of any of its terms.

10. All documents that in any way describe, discuss, reflect, mention, refer or relate to discussions, communications, negotiations, or meetings between representatives of TLC or VIAD and MRLP in connection with the Cash Participation Agreement.

11. All documents that in any way describe, discuss, reflect, mention, refer or relate to or constitute discussions, correspondence or communications concerning TLC's offer in 1999 to relinquish all of its rights in the 90 K Street property, including TLC's right of first refusal, for $25,000.

12. All documents that in any way describe, discuss, reflect, mention, refer or relate to or constitute discussions, correspondence or communications concerning the proposed sale in August 2000 of the 90 K Street property by MRLP to Level 3.

13. All documents that in any way describe, discuss, reflect, mention, refer or relate to or constitute discussions, correspondence or communications concerning the preparation of the March 2, 2005 "Statement of TLC's Position", and exhibits

9

thereto, including without limitation any prior drafts of TLC's position paper.

14.  All documents that in any way describe, discuss, reflect, mention, refer or relate to or constitute discussions, correspondence or communications concerning any disagreement between TLC/VIAD and MRLP about the meaning or interpretation of the terms of the Cash Participation Agreement.

15.  All documents that in any way describe, discuss, reflect, mention, refer or relate to any assessment or analysis of the March 30, 2005 letter and exhibit submitted to the Reznick Group on behalf of MRLP in response to TLC's position paper.

16.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the manner in which TLC or VIAD treated, characterized or categorized in their internal records any interest held by TLC or VIAD in the 90 K Street property from 1987 to the present, including without limitation any interest allegedly arising from the terms of the Cash Participation Agreement.

17.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all communications in any format between any of your employees, agents or representatives concerning the sale of the 90 K Street property to MRLP including without limitation the drafting, negotiation or execution of the Cash Participation Agreement.

10

18.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all communications in any format between any of your employees, agents or representatives concerning the 1999 offer by TLC to relinquish all if its rights in the 90 K Street property, including its right of first refusal, for $25,000.

19.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all communications in any format between any of your employees, agents or representatives concerning the proposed sale in August 2000 of the 90 K Street property by MRLP to Level 3.

20.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the analysis underlying TLC's position on each of the seven issues described on pages 4 and 5 of the March 2, 2005  "Statement of TLC's Position."

21.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all communications in any format between any of your employees, agents or representatives concerning the drafting, preparation of, or analysis in the March 2, 2005  "Statement of TLC's Position" including exhibits.

22.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all communications in any format between any of your employees,

11

agents or representatives concerning any assessment or analysis of the March 30, 2005 letter and exhibit submitted to the Reznick Group on behalf of MRLP in response to TLC's position paper.

23.  All documents that in any way describe, discuss, reflect, mention, refer or relate to any valuation of the 90 K Street property, performed at your request or by any third party, from 1987 through 2005.

24.  All documents that in any way describe, discuss, reflect, mention, refer or relate to any effort by TLC or VIAD from December 1987 to the present to sell its interest in the 90 K Street property.

25.  All documents that in any way describe, discuss, reflect, mention, refer or relate to the selection of an independent accounting firm to perform the review in 2005 of the disputed terms of the Cash Participation Agreement including without limitation all documents relating to the selection of the Reznick Group, P.C. by VIAD.

26.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all communications in any format between any of your employees, agents or representatives concerning VIAD's decision to reject the April 10, 2005 opinion and analysis of the Reznick Group.

27.  All documents that in any way describe, discuss, reflect, mention, refer, relate to or embody any and all

12

communications in any format between any of your employees,
agents or representatives concerning VIAD's claim that the April
10, 2005 opinion and analysis of the Reznick Group is not binding
on TLC and/or VIAD.

28.   All documents that set forth, analyze, discuss, or
refer to any study, report, or analysis of the value, business
prospects, growth or potential profits of the 90 K Street
property.  This requests includes, but is not limited to,
documents setting forth reports prepared by accounting firms,
real estate brokerages, investment banks, security analysts, or
management consultants.

29.   All documents that set forth, analyze, discuss, refer
or relate to the liquidation of TLC.

30.   All documents that in any way describe, discuss,
reflect, mention, refer, relate to or embody any and all
communications in any format between any of your employees,
agents or representatives concerning the liquidation of TLC, and
VIAD's assumption of TLC's interest in the Cash Participation
Agreement, including without limitation any documents reflecting
discussions or communications about the terms of the CPA and/or
TLC's relationship with MRLP and its principals.  All documents
that set forth, analyze, discuss, refer or relate to the
liquidation of TLC.

31.   All documents that set forth, analyze, discuss, or

refer to any policies in effect from 1987 to the present at TLC and/or VIAD concerning document retention.

32. To the extent not covered by the above requests, any documents relating to or supporting VIAD's defense of the allegations set forth in Complaint for Declaratory Judgment filed on behalf of MRLP.

January 27, 2006

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
& KARAS, LLP

Dale A. Cooter
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC   20015
Tel: (202) 537-0700

Attorneys for Plaintiff

14

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I | ) |
| LIMITED PARTNERSHIP | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06CA 000542B |
| | ) Judge Fisher |
| VIAD CORP | ) Next Court Event: |
| | ) Initial Conference: 5/5/06 |
| Defendant. | ) |
| | ) |

## NOTICE OF DEPOSITION

Pursuant to Rule 30 of the Rules of Civil Procedure for the Superior Court of the District of Columbia, please take notice that Plaintiff Montgomery Road I Limited Partnership, by its undersigned counsel, will take the deposition upon oral examination of **Robert Bohannon,** President, Chairman, & CEO, VIAD Corporation, 1850 North Central Avenue, Phoenix, Arizona 85077, at the law offices of COOTER, MANGOLD, TOMPERT & KARAS, L.L.P., 5301 Wisconsin Avenue, N.W., Suite 500, Washington, D.C. 20015, on **February 16, 2005 at 10:00 a.m.,** and continuing thereafter as necessary, before a Notary Public, or some other person authorized by law to administer oaths, for the purpose of discovery or as evidence, or both.

Pursuant to Rule 30 (b) (2), the method of recording may be by sound and visual recording and/or stenographic means.

1

Respectfully submitted,

COOTER, MANGOLD, TOMPERT &
KARAS, L.L.P.

Dale A. Cooter
Donna S. Mangold
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, DC 20015
(202) 537-0700

**Attorneys for Plaintiff**

2

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I | ) |
| LIMITED PARTNERSHIP | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06CA 000542B |
| | ) Judge Fisher |
| VIAD CORP | ) Next Court Event: |
| | ) Initial Conference: 5/5/06 |
| Defendant. | ) |
| | ) |

## NOTICE OF DEPOSITION

Pursuant to Rule 30 of the Rules of Civil Procedure for the Superior Court of the District of Columbia, please take notice that Plaintiff Montgomery Road I Limited Partnership, by its undersigned counsel, will take the deposition upon oral examination of **Kenneth Goldman**, Director of Real Estate, VIAD Corporation, 1850 North Central Avenue, Phoenix, Arizona 85077, at the law offices of COOTER, MANGOLD, TOMPERT & KARAS, L.L.P., 5301 Wisconsin Avenue, N.W., Suite 500, Washington, D.C. 20015, on **February 13, 2005 at 10:00 a.m.**, and continuing thereafter as necessary, before a Notary Public, or some other person authorized by law to administer oaths, for the purpose of discovery or as evidence, or both.

Pursuant to Rule 30 (b) (2), the method of recording may be by sound and visual recording and/or stenographic means.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT &
KARAS, L.L.P.

_____
Dale A. Cooter
Donna S. Mangold
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, DC 20015
(202)537-0700

**Attorneys for Plaintiff**

2

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

MONTGOMERY ROAD I                      )
LIMITED PARTNERSHIP                     )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )Civil Action No. 06CA 000542B
                                        )Judge Fisher
VIAD CORP                               )Next Court Event:
                                        ) Initial Conference: 5/5/06
                    Defendant.          )
                                        )

## NOTICE OF DEPOSITION

Pursuant to Rule 30 of the Rules of Civil Procedure for the Superior Court of the District of Columbia, please take notice that Plaintiff Montgomery Road I Limited Partnership, by its undersigned counsel, will take the deposition upon oral examination of **Ellen Ingersoll**, CFO, VIAD Corporation, 1850 North Central Avenue, Phoenix, Arizona 85077, at the law offices of COOTER, MANGOLD, TOMPERT & KARAS, L.L.P., 5301 Wisconsin Avenue, N.W., Suite 500, Washington, D.C. 20015, on **February 15, 2005 at 10:00 a.m.,** and continuing thereafter as necessary, before a Notary Public, or some other person authorized by law to administer oaths, for the purpose of discovery or as evidence, or both.

Pursuant to Rule 30 (b) (2), the method of recording may be by sound and visual recording and/or stenographic means. this Court shall deem just and proper.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT &
KARAS, L.L.P.

_____

Dale A. Cooter
Donna S. Mangold
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, DC 20015
(202)537-0700

**Attorneys for Plaintiff**

2

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I | ) |
| LIMITED PARTNERSHIP | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 06CA 000542B |
| | ) Judge Fisher |
| VIAD CORP | ) Next Court Event: |
| | ) Initial Conference: 5/5/06 |
| Defendant. | ) |
| | ) |

## NOTICE OF DEPOSITION

Pursuant to Rule 30 of the Rules of Civil Procedure for the Superior Court of the District of Columbia, please take notice that Plaintiff Montgomery Road I Limited Partnership, by its undersigned counsel, will take the deposition upon oral examination of **EVE FIORUCCI**, Assistant Director of Real Estate, VIAD Corporation, 1850 North Central Avenue, Phoenix, Arizona 85077, at the law offices of COOTER, MANGOLD, TOMPERT & KARAS, L.L.P., 5301 Wisconsin Avenue, N.W., Suite 500, Washington, D.C. 20015, on **February 14, 2005 at 10:00 a.m.**, and continuing thereafter as necessary, before a Notary Public, or some other person authorized by law to administer oaths, for the purpose of discovery or as evidence, or both.

Pursuant to Rule 30 (b) (2), the method of recording may be by sound and visual recording and/or stenographic means.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT &
KARAS, L.L.P.

Dale A. Cooter
Donna S. Mangold
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, DC 20015
(202)537-0700

**Attorneys for Plaintiff**

2