```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA
```

|                                    |   |                          |
|------------------------------------|---|--------------------------|
| MONTGOMERY ROAD I,                 | ) |                          |
| LIMITED PARTNERSHIP,               | ) |                          |
|                                    | ) |                          |
|           Plaintiff,               | ) |                          |
|                                    | ) |                          |
|    v.                              | ) | Civil Action 06-00344    |
|                                    | ) | (HHK)                    |
| VIAD CORP.,                        | ) |                          |
|                                    | ) |                          |
|           Defendant.               | ) |                          |

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Montgomery Road I Limited Partnership, by and through its undersigned counsel, Cooter, Mangold, Tompert, and Karas, L.L.P., hereby files this First Amended Complaint for Declaratory Judgment against Defendant VIAD Corp., and as grounds therefor states as follows:

### JURISDICTION AND VENUE

1. This case has been removed to this Court pursuant to 28 U.S.C. § 1441. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties.

2. Venue properly rests in this Court pursuant to 28 U.S.C. § 1391, in that the real property that is the underlying subject matter of the contract at issue lies in the District of Columbia.

## **PARTIES**

3. Plaintiff Montgomery Road I Limited Partnership ("MRLP" or the "Developer") is a Maryland limited partnership formed for the purpose of owning real property. MRLP owns the property located at First and K Streets, N.E. ("90 K Street" or "the Property"). Stewart J. Greenebaum and Samuel G. Rose are two of the limited partners of MRLP.

4. Defendant VIAD Corporation is a Delaware corporation and the parent company and successor in interest to Transportation Leasing Company ("TLC"), a California corporation whose assets are now liquidated, and the former owner of the 90 K Street property.

## **STATEMENT OF FACTS**

5. On or about December 9, 1987, MRLP purchased the 90 K Street NE property from TLC for approximately $11 million dollars. In connection with this sale, MRLP and TLC also executed a "Cash Participation Agreement" (the "CPA"), which contemplated that under certain circumstances TLC would receive 15% of any cash flow generated by the operation of the property ("Operations Cash Flow") or 15% of the net proceeds generated by the sale, disposition, or refinancing of the property ("Appreciation Cash

Flow").

6. The intent of the CPA, which was drafted by attorneys for TLC, was to provide the Developer with a complete return of, and return on, its investment – including a return on its equity, and a payoff of all debt, including interest – before TLC was permitted any participation in Appreciation Cash Flow. The CPA also gave TLC the right of first refusal to purchase the Property. TLC's interest in the property was secured by a Deed of Trust recorded on December 10, 1987 in the land records of the District of Columbia.

7. At the time of the acquisition of the 90 K Street property by MRLP in 1987, a mortgage for $10.3 million was placed on the property with Yorkridge-Calvert Savings and Loan, a local S&L. In March 1989, a second mortgage in the amount of approximately $1.5 million was placed on the Property with the same S&L to fund operating deficits. MRLP paid interest on both loans on an ongoing basis and the limited partners, Greenebaum and Rose, also personally guaranteed the loans.

8. In 1990, Yorkridge-Calvert encountered financial difficulties and came under the control of the Resolution Trust Company (the "RTC"). As a result, MRLP was

required to and did pay off the $1.5 million second trust. The RTC then sold the first mortgage to Sun Chase Bank of Phoenix. MRLP continued to pay interest on that loan until 1996 when S&S Finance Limited Partnership, MRLP's affiliate, acquired the note from Sun Chase.

9. The MRLP and TLC amended the CPA in 1989, effective retroactively as of December 9, 1987, to revise the definition of "Senior Mortgage" in Section 1.39 to clarify that mortgages and deeds of trust executed after the initial loan closing for specified purposes would be superior to TLC's interest.  Specifically, the amendment was executed to make clear that debts incurred to fund carrying costs (such as the $1.5 million second mortgage) would be senior to TLC's interest.

10. In April 1996, S&S Finance, a wholly-owned affiliate of MRLP's Limited Partners, Greenebaum and Rose, purchased from Sun Chase Bank the mortgage on 90 K Street for approximately $9.3 million. Section 2.3 (b) of the CPA, "Permitted Debt," provides that debt can be acquired by a related company so long as it charges interest at or below the rates charged by other financial institutions in similar real estate loans.  From 1996 to date, S&S Finance has charged the Property a below market rate of

     interest, namely 1.5% over prime.  S&S Finance continues to hold the first mortgage on the Property, and a Deed of Trust securing its position is recorded in the land records of the District of Columbia.

11.   In 1997, MRLP's accountants reclassified approximately $7.3 million of the first mortgage debt to equity, for tax reasons. Specifically, for the purposes of the Special Purpose Financial Statements required by the CPA, $7.3 million of the loan held by S&S Finance was classified as Developer's Invested Equity. This reclassification of debt to equity also caused the annual interest on the debt to be included under the heading "Developer's Equity Return" instead of under "Developer's Operating Equity."  Without regard to the classification however, the interest payment, for purposes of the CPA, clearly constitutes interest, not an equity return. These financial statements were supplied annually to TLC and clearly showed these accounting treatments in compliance with the CPA, yet TLC never questioned the statements or the categorization of any financial items within them until a potential sale of the property was contemplated in 2000.

12.   At the time it was acquired, the 90 K Street property

was, and remains, a vacant lot. Apparently believing its interest in the Property to have little if any value, in 1999, after receipt and review of more than twelve years of financial statements, TLC offered to relinquish all of its rights in the Property under the CPA, including its right of first refusal, for $25,000. The parties were unable to reach an agreement on the value of TLC's interest, and no settlement of the matter was ever executed.

13. On or about June 26, 2000, MRLP notified TLC of a pending sale of the Property pursuant to Section 4.1 of the CPA. As stated in the notice, the sale price of the Property was $24,975,000 with expected net proceeds of approximately $23 million. MRLP calculated its cost basis on the property, including the Developer's Invested Equity, Developer's Operating Equity, and Developer's Equity Return to be in excess of $27,000,000. As a result, there would be no positive cash flow from the sales transaction. As part of this pending transaction, however, MRLP sought to resolve any outstanding title issues created by the CPA including obtaining from TLC a waiver of its right of first refusal and the release of any lien on the property, for which MRLP offered to

compensate TLC in the amount of $10,000.00.

14. In response, in August 2000, TLC claimed for the first time that MRLP had overstated the amount of Developer's equity that could be subtracted in calculating the Appreciation Cash Flow and that, if the pending sale took place, TLC would be entitled to a substantial six-figure Cash Appreciation Payment. Specifically, TLC claimed that under the definition of "Appreciation Cash Flow" in Section 3.1 of the CPA, the category "Developer's Equity Return" was not a permitted subtraction.

15. TLC also questioned whether the acquisition of the first mortgage by MRLP's affiliate, S&S Finance, was a "Refinancing" under Section 3.2(b) of the CPA, which would have triggered a disclosure by MRLP and an analysis of whether a Cash Appreciation Payment was due to TLC. TLC also raised concerns regarding MRLP's classifications of debt and equity.

16. On or about November 30, 2000, TLC was liquidated and the Cash Participation Agreement and accompanying deed of trust relating to the 90 K Street property were assigned to Defendant VIAD Corporation, TLC's parent corporation.

17. For reasons unrelated to this lawsuit, the proposed 2000 sale of the 90 K Street property did not take place.

Nevertheless, the dispute between the parties remained concerning the meaning and application of certain terms of the CPA. In 2005, MRLP and VIAD agreed to seek a resolution of the dispute by submitting the matter to an independent accounting firm for review. Specifically, the parties sought the interpretation, analysis, and application of certain terms of the CPA. In addition, the parties asked the independent accountants to analyze the classification of certain costs and charges, and prepare a pro-forma calculation under the CPA for the hypothetical sale of the Property.

18. Pursuant to Section 2.7 of the CPA, Defendant VIAD was permitted to select the independent accountants, and it chose the Reznick Group of Bethesda, Maryland ("Reznick Group"). MRLP paid the full costs of the independent review.

19. Both parties were permitted to, and did, submit position papers and any relevant materials. On March 2, 2005, Defendant VIAD submitted its position paper plus nine related exhibits. In an accompanying cover letter VIAD noted, contrary to the prior understanding between the parties, that neither VIAD nor TLC would be bound by the opinion rendered. MRLP submitted its position paper on

March 30, 2005.

20. In addition to the parties' position papers, the Reznick Group reviewed and analyzed the CPA, the 1989 First Amendment thereto, and the Special Purpose Financial Statements for the years 2002 and 2003. On April 10, 2005 the Reznick Group rendered its opinion, which found in favor of MRLP on five of the six issues submitted to them. The Reznick Group also determined that as of 12/31/2003, the 90 K Street property would have to command a selling price in excess of $37.8 million for VIAD to be entitled to any Cash Appreciation Payment under the terms of the CPA.

21. Defendant VIAD has rejected the Reznick Group opinion, including the finding in its favor, and maintains that the Reznick Group opinion is not binding.

22. In August 2006, MRLP received an offer to purchase 90K from an unrelated third party, TC MidAtlantic Development, Inc. ("TCMD"). In addition, TCMD also offered to purchase the adjacent property located at 45 L Street, N.E., from an affiliate of MRLP, 45 L Street Venture, LLC. ("45 L Venture").

23. The various agreements with TCMD also included the purchase of certain transferable development rights

("TDRs") that had been, or will be acquired in the future by MRLP or by 45 L Venture. The TDRs are valuable rights, in that they add density to the properties to which they are transferred.

24. On August 15, 2006, MRLP notified VIAD of the offer to purchase, pursuant to the right of first refusal provisions set forth in Section 4.1(a) of the CPA. VIAD did not exercise its right of first refusal.

25. On November 2, 2006, MRLP notified VIAD that the agreements with TCMD had been modified, resulting in an approximately five million dollars reduction to the purchase price. In addition, on that same date, MRLP provided VIAD with the modified contracts, so as to comply with the right of first refusal provisions set forth in Section 4.1(c) of the CPA. VIAD did not exercise its right of first refusal.

26. VIAD, through the deposition of its corporate representative on November 7, 2006, has taken the position that, as a component of any Cash Participation Payment, VIAD is also entitled to 15% of the value of the TDRs included in the purchase by TCMD.

27. Pursuant to the First Amendment of Purchase and Sale of Transferable Development Rights between MRLP and TCMD,

dated October 31, 2007, the purchase price of the TDRs to be purchased from MRLP is $21,387,929.00.

28. Pursuant to the First Amendment of Purchase and Sale of Transferable Development Rights between 45 L Venture and TCMD, dated October 31, 2007, the purchase price of the TDRs to be purchased from 45 L Venture is $12,221,600.00. It does not appear that VIAD seeks any Cash Appreciation Payment related to the sale of TDRs from 45 L Venture.

29. The dispute over the TDRs potentially will jeopardize the settlement of the TCMD purchase of 90K and 45 L by VIAD's demand of a substantial escrow (representing the value of the TDRs) before it will release the Deed of Trust on 90 K.

30. The TCMD transaction is currently scheduled to close sometime between January 2 and January 10, 2007.

## COUNT I

### Declaratory Judgment - Appreciation Cash Flow

31. MRLP realleges and incorporates by reference the facts and allegations set forth in Paragraphs 1 – 25 above.

32. For nearly 19 years, MRLP has paid all of the real estate taxes, interest and other payments on the property, and has managed and marketed the 90 K Street property at a substantial loss. MRLP has funded these costs and

operating deficits with no contribution from Defendant VIAD or its predecessor TLC.

33. In addition, over the years MRLP has provided TLC and VIAD with detailed annual Special Purpose Financial Statements for the Property, and these Special Purpose Financial Statements have documented the operational losses incurred by MRLP and the increase in MRLP's equity position in the Property.  Until the potential sale of the Property in 2000, neither TLC nor VIAD ever questioned the Special Purpose Financial Statements or the accounting methods used by MRLP.

34. When Defendant VIAD did raise certain questions concerning the accounting methods used, MRLP submitted the dispute concerning the terms of the CPA (an agreement drafted by attorneys for TLC) to the accounting firm selected by Defendant, and paid the cost of that dispute resolution.  Nevertheless, Defendant VIAD  refuses to be bound by the results.

35. This disagreement between the parties has dragged on for more than five years, and it must be resolved so that MRLP can deliver clear title to 90 K to TCMD. Accordingly, MRLP seeks a Declaratory Judgment that the findings of the independent accountants are valid,

binding, and enforceable as to Defendant VIAD and its predecessor, TLC:

- a) It is proper to deduct Developer's Equity Return in computing Appreciation Cash Flow by including the annual Developer's Equity Return as an allowable incurred Expense under Section 2.3 in computing Operations Cash Flow that is effectively paid from and increases Developer's Operating Equity.  Developer's Operating Equity is then treated as a deduction in computing Appreciation Cash Flow under Section 3.1. (Issue 1);

- b) The 1996 acquisition of the first mortgage debt by S&S Finance, which is owned by MRLP's Limited Partners, Greenebaum and Rose, was not a "refinancing" that should have triggered a Cash Appreciation Payment under Section 3.3(c). (Issue 2);

- c) Any amount advanced by S&S Finance or its partners to pay interest or any other reasonable expense should be treated as if it were made from an        Equity Holder and included in Developer's Operating Equity under Section 3.6(b). (Issue 3);

- d) There is no substance or effect on the computations for Operations Cash Flow, or Developer's Operating Equity, between a cash payment for interest on the first mortgage and a non-cash charge for interest that satisfies MRLP's obligation for interest due.  (Issue 4);

- e) For financial purposes and computations under the Cash Participation Agreement, the first mortgage (held by S&S Finance) was reclassified as equity.  The first mortgage should be classified as debt, and this debt would qualify as Permitted Debt under the CPA. (Issue 5);

- f) The 1996 acquisition of the first mortgage by S&S Finance occurred at a $1,024,571 discount to

       the outstanding loan balance. For the purpose of determining what type of accounting, if any, this transaction should receive for the purpose of computations under the CPA, interest on the first mortgage should only be charged on the amount actually paid by S&S Finance to acquire the first mortgage. The discount on the mortgage would be considered an unreasonable related party fee if not passed on to the Partnership (Section 2.3(b) and Section 3.7). (Issue 6).

36. In the event however, that this Court should decline to find the Reznick Group opinion binding, then MRLP submits that VIAD should not receive the benefit of the discount referred to in the foregoing Issue 6 in the calculation of any Cash Appreciation Payment.

37. Further, MRLP seeks a Declaratory Judgment that under the terms of the CPA:

    a) It is proper to deduct any interest pursuant to loans related to the Property, whether those loans were for the purpose of acquisition of the Property, or to fund operational needs, regardless of whether the interest is reflected as Developer's Equity Return on the Special Purpose Financial Statements;

    b) It is proper in computing Appreciation Cash Flow to deduct the annual Developer's Equity Return (because it is, in fact, interest) as an

>Approved Deduction pursuant to Section 3.4 of the CPA.

**WHEREFORE,** Plaintiff Montgomery Road I Limited Partnership seeks a Declaratory Judgment as set forth above, and for such other and further relief as this Court shall deem just and proper.

### COUNT II

### Declaratory Judgment - Sale of TDRs

38. MRLP realleges and incorporates by reference the facts and allegations set forth in Paragraphs 1 – 36 above.

39. As set forth above, VIAD is currently taking the position that, as a component of any Cash Participation Payment, VIAD is also entitled to 15% of the value of the TDRs sold by MRLP to TCMD. There is however, no basis for such an entitlement under the terms of the CPA. Moreover, TDRs are tradeable commodities that are a creation of the District of Columbia City Council to encourage development in various parts of the city. TDRs were not even in existence at the time the parties entered into the CPA.

40. This issue potentially will jeopardize the settlement of the TCMD purchase of 90 K and 45 L by VIAD's demand of a

    substantial escrow (representing the value of the TDRs to be transferred by MRLP to TCMD) before it will release the Deed of Trust on 90 K.

41. The transactions involving 90 K and 45 L are scheduled to close sometime between January 2 and January 10, 2007.

42. Accordingly, MRLP seeks a Declaratory Judgment that the value of the purchase price attributed to the TDRs cannot be considered in determining the Cash Appreciation Payment, if any, due to VIAD.

    **WHEREFORE,** Plaintiff Montgomery Road I Limited Partnership seeks a Declaratory Judgment as set forth above, and for such other and further relief as this Court shall deem just and proper.

                                    COOTER, MANGOLD, TOMPERT
                                          &amp; KARAS, L.L.P.

                                            _____/s/_____
                                          Dale A. Cooter, Bar #227454
                                          Donna S. Mangold, Bar #358851
                                          5301 Wisconsin Avenue, N.W.
                                          Suite 500
                                          Washington, D.C.  20015
                                          (202)537-0700
                                          efiling@cootermangold.com
                                          *Attorneys for Plaintiff*
                                          *Montgomery Road I Limited*
                                          *Partnership*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21ST day of November, 2006, a copy of the foregoing **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** was sent by electronic mail to:

> Rodney F. Page, Esq.
> Alicia Hogges-Thomas, Esq.
> Bryan Cave LLP
> 700 Thirteenth Street, N.W.
> Suite 700
> Washington, D.C. 20005

/s/

Donna S. Mangold

S:\WPDOCS\GREENEBAUM & ROSE\Pleadings\Complaint (1st Amended).wpd