**EXHIBIT 9**

ENTERED MAR 1 5 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------x
MONTGOMERY ROAD I              :
LIMITED PARTNERSHIP,           :      ORIGINAL
                               :
      Plaintiff/               :
      CounterDefendant,        :
                               :
         v.                    :
                               :
VIAD CORP.,                    :
                               : No. 1:06CV00344(HHK)
      Defendant/               :
      CounterPlaintiff,        :
                               :
         v.                    :
                               :
MONTGOMERY ROAD I              :
LIMITED PARTNERSHIP,           :
                               :
      Defendant/               :
      CounterPlaintiff.        :
------------------------------x

                                    Washington, D.C.
                            Tuesday, February 20, 2007

Deposition of

                    STEVE HALBERT

a witness, called for examination by counsel for
Plaintiff/CounterDefendant pursuant to notice and
agreement of counsel, beginning at approximately
2:24 p.m. at the law offices of Cooter Mangold
Tompert & Karas, 5301 Wisconsin Avenue, NW,

1   Washington, D.C., before Chris A. Mazzochi of Beta

2   Court Reporting, notary public in and for the

3   District of Columbia, when were present on behalf of

4   the respective parties:

5   APPEARANCES:

6      On behalf of Defendant/CounterPlaintiff:

7          RODNEY F. PAGE, ESQUIRE

           Bryan Cave, LLP

8          700 Thirteenth Street, NW

           Washington, D.C.   20005-3960

9          (202) 508-6002

10     On behalf of Plaintiff/CounterDefendant:

11         DALE A. COOTER, ESQUIRE

           Cooter Mangold Tompert & Karas

12         5301 Wisconsin Avenue, NW, Suite 500

           Washington, D.C.   20015

13         (202) 537-0700

14

15

16

17

18

19

20

21

22

19

1   Q   Have you told me essentially all
2   you can recall about the first conversation?
3   A   Yes.
4   Q   After this first
5   conversation -- and I did see an engagement
6   letter.  But I don't need that for right now.
7   A   Okay.
8   Q   You undertook to do an appraisal.
9   A   Correct.
10  Q   Is that right?
11      You can look at your appraisal if
12  you want, or anything else that you want.
13  How did you go about doing it, as you
14  undertook the work?  Just tell me what you
15  did to go about this job.
16  A   Researched land sales in the locale
17  near 90 K Street.  Analyzed them, along with
18  all the other appraisal kinds of things that
19  lead up to it.  And --
20  Q   Know that nifty stuff about -- this
21  is a great market.
22  A   Yeah.

21

1     A    No.

2     Q    But you did go to the site?

3     A    Yes. Uh-huh.

4     Q    Describe the site for me.

5     A    It is a rectangular site at the
6  northwest corner of K Street and First
7  Street, NE.

8     Q    Is the site improved?

9     A    If you mean by improved is there a
10 proposed office building on it yet, no.
11 There are parking spaces. So it's improved
12 with sidewalks and asphalt parking. It's
13 across the street from the D.C. adjudication
14 traffic court, and I have been there. I have
15 appraised other properties within 100 yards
16 of this property in the last two years.
17 So I'm aware of that property. Yeah.

18    Q    The property is paved. It is an
19 asphalt parking lot; right?

20    A    Yeah.

21    Q    They're curved, I guess, to the
22 street?

22

1  A   Yeah.

2  Q   The sidewalk, I presume?

3  A   Yes, that's my recollection.

4  Q   Other than those things, are there

5  any improvements on the property?

6      Help yourself.

7  A   I don't recall right now.

8  Q   Either way?

9  A   I do not recall either way.

10 Improvements were not -- my assignment was

11 the land, not the improvements.

12     Moreover, they would not have

13 contributed to the overall value anyway.

14 They'd be demolished because it was time to

15 re-develop the site, so even if there were

16 some smaller -- something, it was not met.

17 Not --

18 Q   Let me follow up on that one.

19 You're saying it wouldn't have contributed to

20 value anyway, because it would have been

21 demolished.  I think what you're saying is

22 that if there was a building on it, it would

1  have been knocked down to make way for

2  re-development.

3     A   Basically.

4     Q   Is that what you are trying to say?

5     A   Basically.

6     Q   You just don't remember whether

7  there are any other improvement -- buildings

8  or anything on that property other than what

9  you've told me; is that right?

10    A   Certainly nothing noteworthy.

11    Q   In the first portion of your

12 report, you opined "subject to limiting

13 conditions, extraordinary assumptions and

14 hypothetical conditions," that you believe

15 this property as of June 24, '06 is worth

16 $64,800,000.  Is that right?

17    A   That's correct.

18    Q   Your report says -- and I just want

19 you to confirm -- that there were no

20 extraordinary assumptions or hypothetical

21 conditions that had anything to do with this

22 appraisal.

1   tell me.

2       A    I'm unaware of any inaccuracies.

3       Q    Do you perceive this to be

4   complete?

5       A    Yes.

6       Q    As to improvements, it says the

7   site improvements include sidewalk, curbs,

8   and drainage.  Earlier, you told me you

9   couldn't remember if there was any other

10  improvement on this property.  Does this

11  refresh your recollection?

12      A    Yes.

13      Q    Okay.

14      A    That's all I recall.

15      Q    That's fine.  So you and I can

16  confirm that the only improvements that you

17  were involved with here is sidewalks, curbs,

18  and drainage.  Is that accurate?

19      A    Yes.

20      Q    Turning to page 26, you talk about

21  the assessment -- and all that page 26 is

22  whatever is -- whatever the information is at