## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTGOMERY ROAD I LIMITED PARTNERSHIP, <br>             Plaintiff and <br>             Counter Defendant <br><br> v. <br><br> VIAD CORP., <br>             Defendant and <br>             Counterclaimant <br>             and Plaintiff on <br>             the Counterclaim <br><br> v. <br><br> MONTGOMERY ROAD TDR, LLC <br> A DISTRICT OF COLUMBIA LLC <br> 5301 WISCONSIN AVENUE <br> WASHINGTON, D.C. 20015 <br>             Additional <br>             Defendant on the <br>             Counterclaim | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>   Case No.  1:06CV00344 (HHK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT, AND AMENDED AND SUPPLEMENTAL COUNTERCLAIM OF DEFENDANT VIAD CORP

Defendant Viad Corp ("Viad") answers and responds to Plaintiff Montgomery

Road I Limited Partnership's ("MRLP's") First Amended Complaint for Declaratory

Judgment as follows:

### ANSWER

1.    Admit.

2.    Admit.

3.    Admit.

4.      Denied in that the proper name of the Defendant is "Viad Corp", not Viad Corporation.  Otherwise admitted.

5.      Admit, except to state that the CPA speaks for itself and Plaintiff's summary characterizations of the CPA are denied.

6.      The first sentence of paragraph 6 is denied.  The second and third sentences of the paragraph are admitted.

7.      Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 7, and for that reason, denies those allegations.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 8, and for that reason, denies those allegations.

9.      Defendant admits that there was an amendment made to the CPA as alleged in paragraph 9, but denies the characterizations and legal conclusions alleged in describing that document, which speaks for itself.

10.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 10, and for that reason, denies those allegations.

11.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first two sentences of paragraph 11, and for that reason, denies those allegations.  The remaining allegations of paragraph 11 are denied.

12.     The first sentence of paragraph 12 is admitted.  The remaining allegations of paragraph 12 are denied.

13.     Admit.

14.     Defendant admits, as alleged in paragraph 14, that it has asserted that Plaintiff has overstated its calculation of equity and that under the definition of Appreciation Cash Flow in Section 3.1, the Developer's Equity Return is not a permitted subtraction, but it otherwise denies the allegations of paragraph 14.

15.     Admit.

16.     Denied in that the proper name of the Defendant is "Viad Corp", not Viad Corporation.  Otherwise admitted.

17.     The fist two sentences of paragraph 17 are admitted.  Defendant further admits that advice of an accountant was sought by the parties, but the allegations of paragraph 17 are otherwise denied.

18.      Defendant admits that Plaintiff paid the accountant but otherwise denies the allegations of paragraph 18.

19.     In response to the allegations of paragraph 19, Defendant admits that both parties submitted letters to the accountant and that Defendant has asserted that the advice to be received was not binding, but it otherwise denies the allegations of this paragraph.

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first sentence of paragraph 20, and for that reason, denies those allegations.  With respect to the remaining allegations of the paragraph, the allegations are denied to the extent that they characterize the accountant's report, which speaks for itself.

21.    Admit.

22.    Admit.

23.    Denied to the extent that Plaintiff's characterization of the transaction with

TCMD suggests that it is appropriate for TDRs to be purchased through a separate

agreement.  Also denied to the extent that Plaintiff's description of TDRs suggests that

TDRs are separate from the land.  Otherwise admitted.

24.    Admit.

25.    Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegation that the modification resulted in a purchase price

reduction of approximately $5 million.  Otherwise admitted.

26.    Admit.

27.    Admit.

28.    Defendant is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations of the first sentence of paragraph 28, and for

that reason, denies those allegations.

29.    Denied.

30.    Defendant admits only that the agreements between TCMD and MRLP

state that the transaction is scheduled to close between January 2 and January 10, 2007.

31.    The response to paragraph 31 incorporates by reference the responses to

paragraphs 1 through 30 above.

32.    Denied.

33.    Defendant admits that it has received certain financial reports from the

Plaintiff but otherwise denies the allegations of paragraph 33.

34.     Defendant admits that it agreed to seek non-binding advice from an accountant but otherwise denies the allegations of paragraph 34.

35.     Denied.

36.     Defendant states that the Reznick Group opinion is not binding on the parties and denies that the relief requested in paragraph 36 is appropriate or lawful.

37.     Defendant denies that the relief requested in paragraph 37 is appropriate or lawful.

38.     The response to paragraph 38 incorporates by reference the responses to paragraphs 1 through 38 above.

39.     Defendant admits the first sentence of paragraph 39 but denies the remainder of paragraph 39.

40.     Denied.

41.     Defendant admits only that the agreements between TCMD and MRLP state that the transaction is scheduled to close between January 2 and January 10, 2007.

42.     Defendant denies that the relief requested in paragraph 42 is appropriate or lawful.

## General Denial

And further, Defendant Viad denies each and every allegation of fact not here specifically admitted.

## AFFIRMATIVE DEFENSES

By way of further answer, Defendant asserts the following defenses:

## First Defense

The First Amended Complaint fails to state a claim on which relief may be granted.

### Second Defense

With respect to Count I, the advice of the accountant is not binding and was not the result of a contractual dispute resolution. That advice is irrelevant to the resolution of any dispute between the parties and is not admissible evidence.

### Third Defense

The rights and obligations of the parties are set forth in the CPA, and any declaration or interpretation of those rights should conform to and implement that Agreement. All the requests for relief enumerated by Plaintiff in paragraphs 35, 36, 37 and 42 are contrary to the plain meaning of the CPA, and any such declaration or interpretation should so find.

### COUNTERCLAIM

### Parties

1.     Counterclaimant Viad Corp ("Viad") is a Delaware Corporation, with its principal place of business located in Phoenix, Arizona.

2.     Counter defendant Montgomery Road I Limited Partnership ("MRLP") is a Maryland Limited Partnership. MRLP owns the property located at First and K Streets, N.E. ("90 K Street" or "the Property").

3.     Additional Defendant on the Counterclaim Montgomery Road TDR, LLC ("MRTDR")is a District of Columbia Limited Liability Company, with its principal place of business located in Washington, DC. MRTDR is under common control with MRLP.

The purpose of the company is to hold and sell transferable development rights ("TDRs")

on behalf of MRLP with the intent of avoiding MRLP's contractual obligations to Viad.

## Jurisdiction and Venue

4.      This Court has personal jurisdiction over the parties to this counterclaim.

5.      This court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1367(a), based upon: (1) the Court's original jurisdiction over the underlying

claim pursuant to 28 U.S.C. § 1332; and (2) because this Counterclaim relates to and

forms part of the same case or controversy as the underlying claim.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## Count I: Declaratory Judgment – Transferable Development Rights

7.      In its First Amended Complaint, MRLP seeks a declaratory judgment that

"TDRs" relating to 90 K Street, which it or its affiliate MRTDR own or acquire, are

separable from the property, not included within the scope and meaning of the CPA, and

are not to be included in calculating the Cash Appreciation Payment due to Viad upon

sale of 90 K Street.  This counterclaim seeks a declaratory judgment that MRLP's

interpretation is incorrect, and that the total sale price of 90 K Street, including the value

assigned by MRLP, MRTDR and the buyer for the transfer of TDRs is properly included

in the calculation of the Cash Appreciation Payment.

8.      TDRs are an aspect of the District of Columbia zoning laws applicable to

90 K Street and permit increased density on the property.

9.      As a matter of law, the zoning of the property adheres to, vests in and is

part of the land.

10.    The definition of "property" in the Cash Participation Agreement ("CPA") encompasses TDRs because TDRs are improvements on the property and are an interest in the property.

11.    MRLP itself has in the past interpreted the CPA to include TDRs in the calculation of the Cash Appreciation Payment.  In its contract to sell the 90 K Street property to Level 3 Communications, LLC ("Level 3") in 2000, MRLP included "development rights" in its definition of property.  The notice to Viad of that contract included both the cost of acquisition of TDRs and their value in sale in the terms tendered to Viad under the CPA.

12.    At the time of the Level 3 agreement, MRLP already had purchased and assigned some TDRs on the 90 K Street property.

13.    For purposes of submitting its annual financial statements under the CPA, MRLP identified and deducted the cost of acquiring the TDRs from the cash flow for 90 K Street.  These financial statements were sent to Viad from 2001 to 2006.

14.    MRLP has recorded its purchase of some of the 90 K Street TDRs in the District of Columbia land records.

15.    In August 2006, MRLP signed an agreement with TC MidAtlantic Development, Inc. ("TCMD") for the sale of the 90 K Street property.  At that time, TCMD also offered to purchase the adjacent property, which is located at 45 L Street, N.E.

16.    As part of its sale of the 90 K Street property to TCMD, MRLP has sought to exclude Viad from participating in the appreciation cash flow (or net profit) from the

Case 1:06-cv-00344-HHK    Document 24-4    Filed 03/29/2007    Page 9 of 19


sale of the TDRs by creating a separate contract for the TDRs, the so-called Agreement

of Purchase and Sale of Transferable Development Rights.

17.    The separation of the TDRs from the land in 2006 is an attempt by MRLP

to exclude from the calculation of the Cash Appreciation Payment a portion of the

consideration paid for the land or for an interest in the land.

18.    Specifically, MRLP seeks to classify the amount identified in the sales

contract for TDRs, $21,387,929.00, as excluded from the calculation of the Cash

Appreciation Payment.

19.    MRLP has paid or will pay approximately $6 per square foot of buildable

area for acquisition of the TDRs.  On information and belief, $6 per square foot is or is

near the "fair market value" for TDRs in the District of Columbia.

20.    TDRs have little independent value – certainly none beyond the "fair

market value" of their acquisition – unless and until they are assigned or designated to a

specific property, such as 90 K Street, as required by law.

21.    The value assigned to the TDRs in selling or "flipping" them in a separate

contract, as if they are not part of the 90 K Street property, is $68 per square foot.  The

increased value, at $68 per square foot (an eleven plus fold increase over the purchase

price of such TDRs), can only be achieved upon such TDRs (and associated floor area

ratio – F.A.R./ buildable square footage on the site) being affixed to and running with the

90 K Street property.  Such value cannot be achieved by selling the TDRs independent of

the 90 K Street property.  The attempt to treat the TDRs separately, without recognizing

the value that can only be derived from their application to 90 K Street, is a blatant

attempt by MRLP to deprive Viad of its contractual right to participate in the appreciated

value of the property.  The separation of the sale of the TDRs into a separate contract is a

sham.

23.    MRTDR is the alter ego of MRLP and has the same owners.

23.    MRTDR is an "Affiliate" and a "Person" under control of MRLP within

the meaning of the CPA.

24.    Under section 3.3 of the CPA, any payment made to an Affiliate of MRLP

in connection with a sale of the property is included in the calculation of the Cash

Appreciation Payment.

### Count II: Breach of Contract

25.    During the course of this litigation, MRLP has engaged in actions to avoid

and defeat its contractual obligations to Viad under the CPA.  As set forth in this Count,

the efforts of MRLP to twist or disguise the facts of its sale of the Property continued

beyond the formation of its contract to sell 90 K Street, N.E., in August, 2006.  As set

forth in this Count, MRLP has disregarded the obligations of the CPA, is in default under

the Agreement, and has failed to comply even with its obligations to provide information

on the calculation of the payment owed to Viad.

26.    On January 11, 2007, MRLP proceeded to close on the transaction to sell

90 K Street, N.E. to TC Mid-Atlantic Development, Inc., or one of its affiliates

("TCMD").

27.    The total consideration paid to MRLP for the sale of 90 K Street N.E. on

January 11, 2007, including deferred compensation,  was $67, 424,457.

28.    Under Section 3.2 of the CPA, MRLP was required to make the

Appreciation Cash Payment within three (3) days of that closing.

29.     No payment was made by MRLP at any time nor was any payment received by Viad as a result of the sale of the property on January 11, 2007

30.     Under Section 3.9 of the CPA, MRLP was required to deliver to Viad "a statement reflecting the Agreed Value, the Approved Deductions, the Closing Costs and the Appreciation Cash Flow used in calculating the Appreciation Cash Payment and a detailed breakdown of all items necessary for the calculation of each such item."

31.     No "statement" as required by Section 3.9 has been delivered by MRLP to Viad.

32.     On February 21, 2007, Viad gave written notice to MRLP under Section 7.3 that it was in default under the CPA for failure to provide either a payment or a statement of the calculation of the payment.  The CPA provides that MRLP had a ten (10) day period to cure monetary defaults and a thirty (30) day period to cure non-monetary defaults after notice from Viad.

33.     MRLP made no effort to cure these defaults, and it remains in default.

34.     The CPA provides in section 3.1 that the Cash Appreciation Payment shall be based on the Agreed Value of the Property, less certain specified deductions as defined in the CPA.

35.     The Agreed Value is defined in Section 3.3 of the CPA as the greater of the gross proceeds actually received in a sale of the property or the fair market value of the property.

36.     After the sale of the Property on January 11, 2007, MRLP failed to provide a statement of the Agreed Value based on the sale or otherwise to provide its calculation of the Cash Appreciation Payment.

11

37.     The CPA provides in Section 3.11 that, if the parties disagree about the Agreed Value, Viad may notify MRLP within ninety days of the receipt of the payment of that disagreement.  Because MRLP had filed this suit to declare that the TDR portion of the sale was not covered by the CPA, and because it failed and refused to provide any payment or even a statement of how it calculated the lack of a payment and its deductions from the Agreed Value upon which it is relying, Viad gave notice on February 21, 2007, in writing, that a disagreement existed.

38.     Viad also, on January 31, 2007, provided to MRLP in accordance with the CPA a report prepared by an M.A.I. appraiser, as provided for in Sections 3.8 and 3.11 of the CPA, with an opinion as to the fair market value of the Property.

39.     The appraiser, Steve Halbert, of Cushman and Wakefield, provided his written opinion that the fair market value of the Property on June 24, 2006, and within a 6 month period thereafter, which period included the date of the contract between MRLP-TC Mid-Atlantic Development, Inc., was $64,800,000.

40.     Section 3.8 of the CPA provides that MRLP is to select its own appraiser and that MRLP's appraiser along with Viad's appraiser shall select a third appraiser..

41.     MRLP has failed to name an appraiser to determine fair market value.

42.     Viad's notice of February 21, 2007, gave notice to MRLP that it was in default for failure to contest the fair market value calculation and component of the Agreed Value under the CPA.

43.     The Agreed Value for the Property under Section 3 of the CPA is the higher of the sales price or the fair market value of the Property, and, thus, based on

12

inclusion of the TDR portion of the contract that MRLP has sought improperly to exclude, is $67, 424,457.

44.    In the alternative, in no event is the Agreed Value less than the fair market value for the Property, appraised in accordance with the CPA as $64,800,000.

45.    Calculation of the Agreed Deductions and other components of the Appreciation Cash Payment is based on the legitimate expenses incurred by MRLP in the sale of the property and upon the proper calculation of the Agreed Deductions.

46.    MRLP has not provided financial statements pursuant to the CPA for fiscal years 2005 and 2006.

47.    The failure to provide financial statements under Section 2.6 of the CPA is default under the contract.

48.    During the course of litigation, on November 21, 2006, MRLP has tendered a compilation of financial data, accompanied by a letter from its litigation counsel with his opinion that the financial data is a correct statement of expenses and other deductions under the CPA.  (This compilation is hereinafter referred to as the "Cooter Financials.")  By contrast, the CPA requires the certification of an independent certified public accountant applying generally accepted accounting principles on a consistent basis to the books and records of MRLP.

49.    The Cooter Financials do not comply with the requirements of the CPA.

50.    The Cooter Financials are inconsistent with tax returns filed by MRLP and, on information and belief, with the tax returns filed by the principals of MRLP. Specifically, whereas the Cooter Financials classify all out of pocket expenses by MRLP in maintaining the land as loans rather than as equity investments in the Property, the

13

actual accounting and tax treatment of these items for all other purposes and in prior

financial statements submitted by MRLP to Viad classified these expenses as equity.

51.    The purpose and intent of the Cooter Financials is to retroactively change

the accounting for MRLP's ownership of the Property for the purpose of increasing

artificially those items that might be deducted as an expense from the Agreed Value of

the Property upon sale and, thus, defeat the possibility of a payment to Viad.

52.    Like the structure of the sale documents, which purport to segregate

consideration for the purchase of the Property by TCMD into land value and value for

attributes of the zoning, thus lowering the Agreed Value under the CPA, the failure to

provide financial statements for 2005 and 2006 and to substitute during this litigation the

Cooter Financials is a sham which fraudulently seeks to increase the possible deductions

or adjustments to the payment due to Viad.

53.    Calculation of the Cash Appreciation Payment will require an audit of the

records of MRLP and must be conducted, as contemplated in the CPA, by a qualified

accountant.

### Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing

25. 54. Plaintiff realleges and incorporates by reference the facts and allegations

set forth in paragraphs 1-2453 above.

26. 55. From 1987 to the present, representatives from MRLP continuously

misrepresented the value of the 90 K Street property in conversations with Viad

employees.

27.56.  By misrepresenting the value of the 90 K Street property, MRLP representatives sought to convince Viad to relinquish its participation rights under the CPA for a cheap price.

28.57.  According to the CPA, MRLP must provide yearly financial statements that detail the financial condition of the 90 K Street Property and that meet certain requirements set forth in the CPA.  Among the requirements is that the financial statements be "consistent."

29.58.  Between 1987 and the present, MRLP has taken multiple, sometimes contradictory, positions on the manner in which items should be classified in their financial statements.  Each change in classification was intended to decrease the appreciation cash flow and, thus, the appreciation cash payment to Viad.

30.59.  The most recent financial statement, received by Viad in November 2006, is an attempt to decrease Viad's appreciation cash payment.  This financial statement takes positions and classifies items in a manner that conflicts with the Reznick Opinion, which Plaintiff supposedly filed this suit to enforce, and it is inconsistent in material regards with prior financial submissions.

31.60.  Through its conduct, MRLP has acted in bad faith by intentionally evading the letter and spirit of the CPA.

32.61.  MRLP has sought to destroy Viad's right to receive the fruits of its contract.

### Count IIIIV: Attorneys Fees

33.62.  Section 7.4 of the CPA provides as follows:

7.4     Attorneys Fees.  If either party hereto shall bring suit

against the other as a result of any alleged breach or failure of the

other party to fulfill or perform any covenants or obligations under

this Agreement, then in such event, the prevailing party in such

action shall, in addition to any other relief granted or awarded by

the court, be entitled to judgment for reasonable attorney's fees

incurred by reason of such action and all costs of suit and those

incurred in preparation thereof at both trial and appellate levels.

34.63.  MRLP has breached and failed to fulfill or perform its covenants and

obligations under the CPA.

35.64.  Viad requests that this Court award attorneys fees to Plaintiff, and such

other relief as this court may deem proper.

WHEREFORE, Defendant and Counterclaimant Viad demands and requests that

the First Amended Complaint be dismissed with prejudice, that reasonable attorneys fees

be awarded to Viad under the terms of the Cash Participation Agreement, and that costs

be assessed against Plaintiff.

AND FURTHER, that the Court declare the rights of the parties in connection

with the calculation of the Cash Appreciation Payment under the terms of the Cash

Participation Agreement, specifically that

A)     Reznick Opinion is not a binding interpretation and was advisory in nature

only;

B)     The Developer's Equity Return is not a deduction in computing the Cash

Appreciation Payment;

16

C)      The 1996 acquisition of the first mortgage debt by S & S Finance was a "refinancing" that should have triggered a Cash Appreciation Payment;

D)      Accounting for all payments under the Cash Participation Agreement must be on a "cash basis" only, and accounting by MRLP on any other basis is erroneous and contrary to the contract;

E)      The accounting for the property must be on a consistent basis;

F)      MRLP has failed to comply with the requirement of the Cash Participation Agreement with regard to its accounting practices and reports to Viad;

G)      TDRs acquired by MRLP and/or its affiliate MRTDR for use at 90 K Street are an interest in the property, and their sale shall be taken into account in the calculation of the Cash Appreciation Payment; and,

H) That MRLP is in default under the CPA;

I) That the Agreed Value under the CPA for purposes of calculating the Cash Appreciation Payment is $67,424,457, but in no event is less than $64,800,000, the fair market value of the Property.

J) That an audit of the books and records of MRLP and of its affiliates, subsidiaries, entities under common ownership, parents, members, partners, principals, employees and agents be conducted at the expense of MRLP to determine the amount of Cash Appreciation Payment due to Viad under the CPA.

K) Such other and further relief as this Court may find just and appropriate.

Respectfully Submitted,


/s/   Rodney F. Page
Rodney F. Page (D.C. Bar No. 37994)
Alicia I. Hogges-Thomas (D.C. Bar No. 480548)
Bryan Cave LLP
700 Thirteenth Street, N.W.
Washington, D.C. 20005-3960
Phone: 202-508-6000
Fax: 202-508-6200

Attorneys for Defendant *Viad Corp*

Dated:   ~~January 2,~~ March 29, 2007

Document comparison done by DeltaView on Thursday, March 29, 2007 5:08:12 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://dc01docs/303398/4 |
| Document 2 | pcdocs://dc01docs/303398/6 |
| Rendering set | BCLLP |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 50 |
| Deletions | 15 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 65 |