# EXHIBIT 45

## UMBRELLA AGREEMENT

THIS UMBRELLA AGREEMENT (this "Agreement") is made and entered into as of the 10th day of August, 2006, by and between (i) MONTGOMERY ROAD I LIMITED PARTNERSHIP, a Maryland limited partnership ("MRLP"), (ii) 45 L STREET VENTURE, LLC, a District of Columbia limited liability company ("45 L"), and (iii) TC MIDATLANTIC DEVELOPMENT, INC., a Delaware Corporation ("Purchaser"). MRLP and 45 L are sometimes collectively referred to as "Seller".

### RECITALS

A. 45 L and Purchaser are parties (i) to that certain Land Purchase and Sale Agreement of even date herewith ("45 L Land PSA") for the acquisition and sale of certain land, together with any improvements, fixtures, structures, and personal property situated thereon and intangible property associated therewith, located in the District of Columbia and known as Square 674, Lot 433 and having an address of 45 L Street, NE, Washington, D.C. ("45 L Property"), and (ii) to that certain 45 L TDR Purchase and Sale Agreement of even date herewith ("45 L TDR PSA") for the acquisition and sale of transferable development rights which are recorded on the 45 L Property ("45 L TDRs").

B. MRLP and Purchaser are parties (i) to that certain Land Purchase and Sale Agreement of even date herewith ("90 K Land PSA") for the acquisition and sale of certain land, together with any improvements, fixtures, structures, and personal property situated thereon and intangible property associated therewith, located in the District of Columbia adjacent to the 45 L Property and known as Square 674, Lot 432 and having an address of 90 K Street, NE, Washington, D.C. ("90 K Property"), and (ii) to that certain 90 K TDR Purchase and Sale Agreement of even date herewith ("90 K TDR PSA") for the acquisition and sale of transferable development rights (a) recorded on, and (b) to be contracted for and/or to be acquired and recorded on the 90 K Property (collectively, "90 K TDRs"). The 45 L Land PSA, the 45 L TDR PSA, the 90 K Land PSA, and 90 K TDR PSA are hereinafter individually referred to as a "Sale Agreement", and together referred to collectively as the "Sale Agreements". The 45 L Property, 45 L TDRs, the 90 K Property and 90 K TDRs are hereinafter collectively referred to as the "Sale Property".

C. MRLP, 45 L and Purchaser desire to set forth herein certain additional agreements with respect to the Sale Agreements.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby covenant and agree as follows:

1. **RECITALS.** The foregoing Recitals are hereby incorporated by this reference and made a substantive part hereof. Any capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in the Sale Agreements.

2. **CLOSING.** Closing on the transactions contemplated by each of the Sale Agreements shall occur simultaneously on the Closing Date (except that the Secondary Closing under the 90K TDR PSA for the assignment of the To Be Acquired TDRs contract or the To Be Acquired TDRs themselves, shall close subsequent to the Closing Date for the rest of the Sale Property, and as provided in the 90 K TDR PSA), and any extension of the Closing Date under any Sale Agreement shall automatically effect an extension of the Closing Date under the other Sale Agreements, except for an extension that may effect the closing related to the To Be Acquired TDRs. For example, if the Closing under the 90 K Land PSA is extended pursuant to Paragraph 1.1(a), Section 5.1, or any other provision of the 90 K Land PSA, the Closing Date under the other Sale Agreements shall be automatically extended to the same date even though there is not a corresponding provision in the other Sale Agreements.

3. **MUTUAL INTERDEPENDENCE.** It is the express intention of the parties that all of the Sale Agreements are mutually interdependent on each other and that no Closing for the transactions contemplated in one Sale Agreement shall occur without the Closing of the others (except as provided for the 90 K To Be Acquired TDRs). A default or breach under one Sale Agreement shall be deemed a default or breach under the other Sale Agreements, any exercise of remedies under one Sale Agreement shall be deemed an exercise of remedies under the other Sale Agreements, and any failure to satisfy a condition under one Sale Agreement shall be deemed a failure to satisfy a condition under the other Sale Agreements. A termination under one Sale Agreement shall be deemed to be a termination under the other Sale Agreements. In the event of a default or breach, failure of a closing condition, or an exercise of an express termination right under one Sale Agreement, the same shall be deemed to be a default or breach, failure of a closing condition, or an exercise of an express termination right under all Sale Agreements, and consequently the Earnest Money under all Sale Agreements shall be released to Purchaser or Seller, as applicable, in the manner provided under such Sale Agreement. For example, if Purchaser sends a Due Diligence Termination Notice or elects to terminate the 90 K Land PSA due to a failure of a condition to Purchaser's obligation to consummate the Closing under the 90 K Land PSA, the other Sale Agreements shall terminate and the Earnest Money under all of the Sale Agreements shall be returned to Purchaser. Similarly, if Purchaser defaults under the 45 L Land PSA, all Sale Agreements shall terminate and the Earnest Money under all of the Sale Agreements shall be delivered to the Seller, as applicable.

4. **SEVERABILITY.** If any provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

5. **BINDING EFFECT.** This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

6.  **AUTHORITY.** Each party represents and warrants to each of the other parties that (i) it has the full right and authority to enter into this Agreement, (ii) the execution and performance of this Agreement will not conflict with any agreement which it is a party, or to its knowledge, binding upon it, and (iii) the person signing this Agreement on behalf of it is authorized to do so.

7.  **CONFLICTS**. In the event any provision of this Agreement conflicts with any provision of the Sale Agreements, such provision of this Agreement shall govern and control for all purposes and in all respects.

8.  **COUNTERPARTS.** This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument.

9.  **ENTIRE AGREEMENT.** This Agreement contains the entire agreement between the parties with respect to the relationship among the Sale Agreements. No change or modification of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any of the provisions of this Agreement shall be valid unless the same is in writing and is signed by the party against which it is sought to be enforced.

IN WITNESS WHEREOF, the parties hereto have executed this Umbrella Agreement as of the day and year first set forth above:

**PURCHASER:**

TC MIDATLANTIC DEVELOPMENT, INC.
a Delaware corporation

By: *[signature]*
Name: DANIEL S. HUDSON
Title: PRESIDENT

**45 L:**

45 L STREET VENTURE, LLC, a District of Columbia limited liability company

By: _____
Samuel G. Rose, Managing Member

6.   **AUTHORITY.** Each party represents and warrants to each of the other parties that (i) it has the full right and authority to enter into this Agreement, (ii) the execution and performance of this Agreement will not conflict with any agreement which it is a party, or to its knowledge, binding upon it, and (iii) the person signing this Agreement on behalf of it is authorized to do so.

7.   **CONFLICTS**. In the event any provision of this Agreement conflicts with any provision of the Sale Agreements, such provision of this Agreement shall govern and control for all purposes and in all respects.

8.   **COUNTERPARTS.** This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument.

9.   **ENTIRE AGREEMENT.** This Agreement contains the entire agreement between the parties with respect to the relationship among the Sale Agreements. No change or modification of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any of the provisions of this Agreement shall be valid unless the same is in writing and is signed by the party against which it is sought to be enforced.

IN WITNESS WHEREOF, the parties hereto have executed this Umbrella Agreement as of the day and year first set forth above:

**PURCHASER:**

TC MIDATLANTIC DEVELOPMENT, INC.
a Delaware corporation


By: _____
Name: _____
Title: _____

**45 L:**

45 L STREET VENTURE, LLC, a District of Columbia limited liability company

By: _____
Samuel G. Rose, Managing Member

3

**MRLP:**

MONTGOMERY ROAD I LIMITED PARTNERSHIP, a Maryland limited partnership

By: Montgomery Road, Inc., a Maryland corporation, its general partner

By: /s/ Samuel G. Rose
Name: Samuel G. Rose
Title: Vice President

F:\Clients\421\14\umbrella agreement 8-10-06.DOC

4