# EXHIBIT 67

## AGREEMENT OF PURCHASE AND SALE
## OF TRANSFERABLE DEVELOPMENT RIGHTS

**THIS AGREEMENT OF PURCHASE AND SALE OF TRANSFERABLE DEVELOPMENT RIGHTS** ("**Agreement**") is made and entered into this 29th day of September, 2006 ("**Effective Date**") by and between **FREEDOM FORUM, INC.,** a Virginia not-for-profit corporation ("**Seller**"), and **MONTGOMERY ROAD TDR, LLC,** a District of Columbia limited liability company ("**Purchaser**").

### RECITALS:

A.    Seller holds fee simple title to Lot 34 in Square 491 in the District of Columbia (as more particularly described on the attached Exhibit A, "**Lot 34**") and is constructing thereon a mixed use project to contain residential, museum, and commercial uses. Seller is in process of (a) subjecting Lot 34 to a condominium regime (the declaration and plat and plans effecting the imposition of such condominium regime being sometimes hereinafter referred to as the "**Condominium Instruments**") and (b) causing assessment and taxation lot numbers to be assigned to the resulting condominium units.

B.    Residential construction on a portion of Lot 34 in Square 491 to be assigned one of the aforementioned condominium units (sometimes referred to herein as the "**Sending Lot**") results in the generation of transferable development rights ("**TDRs**") in accordance with the Downtown Development District Regulations, 11 D.C.M.R., Chapter 17, Section 1700 et seq., as amended (the "**DD Regulations**").

C.    The District of Columbia Zoning Commission (the "**Zoning Commission**") has adopted certain rules and regulations which permit the transfer of certain TDRs from Lot 34 to a receiving zone property, or to a purchaser for re-transfer to a receiving site in the future in certain circumstances. These rules and regulations include, without limitation, the DD Regulations.

D.    Seller owns unused TDRs at the Sending Lot that are eligible for transfer to Purchaser.

E.    Seller desires to sell and transfer from the Sending Lot a total of one hundred ninety-two thousand five hundred twenty-four (192,524) square feet of TDRs; however, as of the Effective Date, a Transfer of Development Rights Covenant has not been entered into between Seller and the District of Columbia with respect to the Sending Lot. A draft of said covenant is currently under review by the District of Columbia.

**NOW, THEREFORE,** in consideration of the foregoing Recitals, which are a material part of this Agreement and not mere precatory language, the mutual terms, conditions and covenants set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, Seller and Purchaser hereby agree as follows:

- 1 -

**MR 24115**

1.     **Purchase and Sale of TDRs.**

    1.1     **Commitment to Sell.** Upon the terms and subject to the conditions set forth in this Agreement, Seller shall sell, convey, transfer, assign and deliver a total of one hundred ninety-two thousand five hundred twenty-four (192,524) square feet of TDRs ("**Development Rights**") from the Sending Lot to Purchaser in accordance with all applicable governmental laws, rules and regulations, and free and clear of all liens, claims, mortgages or encumbrances.

    1.2     **Commitment to Purchase.** Upon the terms and subject to the conditions set forth in this Agreement, Purchaser hereby agrees to purchase and accept transfer of such Development Rights from Seller and shall pay or deliver to Seller the Purchase Price (as set forth below).

    1.3     **Purchase Price.** In consideration of the transfer of the Development Rights from the Sending Lot to Purchaser, Purchaser shall pay or deliver to Seller an amount equal to One Million One Hundred Fifty-Five Thousand One Hundred Forty-Four Dollars ($1,155,144.00) ("**Purchase Price**"). The Purchase Price shall be payable as follows:

    (A)     Fifty Thousand Dollars ($50,000.00) in cash, which will be tendered by Purchaser to Commonwealth Land Title Insurance Company ("**Escrow Agent**"), within five (5) business days after the execution of this Agreement, as the deposit (together with all interest earned thereon, and as the same may be increased pursuant to Section 2.1 below, the "**Deposit**") pursuant to the terms of Section 1.4 below.

    (B)     The remainder of the Purchase Price, together with the Deposit, will be paid to Seller in cash at Closing (as defined below) subject to the default provisions set forth herein.

    1.4     **Deposit.** The Deposit shall be held by Escrow Agent pursuant to Section 7 of this Agreement in an interest bearing account (with interest accruing for the benefit of the party ultimately entitled to the Deposit in accordance with this Agreement). Unless otherwise returned to Purchaser or released to Seller in accordance with any other provision of this Agreement, the Deposit shall be applied to the Purchase Price at Closing.

2.     **Closing.**

    2.1     **Time and Place.** Full and final consummation of the transactions contemplated herein ("**Closing**") shall take place at the offices of the Escrow Agent, at 10:00 a.m. on the date (the "**Closing Date**") that is forty-five (45) days after Seller has notified Purchaser in writing (the "**Closing Date Notice**") that the District of Columbia has executed and acknowledged the TDR Covenant and the TDR Certificate (both as defined below) and delivered the same to Seller; provided, however, that by written notice to Seller within thirty (30) days after Purchaser's receipt of the Closing Date Notice (the "**Closing Date Extension Notice**"), Purchaser shall have the right to extend the Closing Date to the date set forth in the Closing Date Extension Notice (which shall not be later than October 31, 2007); provided further, however, that on or before the later of (a) five (5) business days after Purchaser delivers the Closing Date

**MR 24116**

Extension Notice and (b) April 1, 2007, Purchaser shall deliver to Escrow Agent an amount equal to Two Hundred Thousand Dollars ($200,000.00) in cash, which amount shall constitute an increase in, and be held as part of, the Deposit. Notwithstanding the foregoing provisions of this Section 2.1 to the contrary, if the Closing Date would otherwise occur on a day that is not a business day, then the Closing Date shall be extended so as to occur on the next business day. In the event Closing has not occurred by November 1, 2007, this Agreement shall automatically terminate in which event the Escrow Agent shall return the Deposit and any interest thereon to Purchaser, and neither Seller nor Purchaser shall have any further liability to each other under or in respect to this Agreement.

2.2    **Closing Costs.** Purchaser shall pay for the costs of any title examination ordered by Purchaser. All customary title company closing charges and notary fees and any District of Columbia recordation and transfer taxes shall be paid one-half by Seller and one-half by Purchaser. All other costs (including, without limitation, attorneys, architect or other professional fees and costs) shall be borne by the respective party who engaged such professional.

2.3    **Conditions to Closing.**

(A)    **Seller.** The obligation of Seller to proceed to Closing is subject to the satisfaction, at or prior to Closing, of each of the following conditions, any of which may be waived, in whole or in part, in writing by Seller in its sole discretion at or prior to Closing:

(i)    All of the representations and warranties of Purchaser set forth in this Agreement shall be true and correct in all material respects as if made on and as of the Closing Date.

(ii)    Purchaser shall have performed and complied in all material respects with all of the covenants required by this Agreement to be performed or complied with by Purchaser at or prior to Closing.

(iii)    The District shall have executed, acknowledged and unconditionally delivered the TDR Covenant and the TDR Certificate to Seller for recordation in the Land Records of the Office of the Recorder of Deeds for the District of Columbia (the "**Land Records**").

(iv)    No change in the DD Regulations or other applicable law shall have occurred after the Effective Date (or be noticed in the District of Columbia Register after the Effective Date for hearing) that, as a result of the transfer of Development Rights contemplated by this Agreement, prohibits the Seller from transferring the Development Rights in accordance with this Agreement.

(v)    The District of Columbia shall have approved the Condominium Instruments and assigned an assessment and taxation lot number to the Sending Lot.

**MR 24117**

(vi)    The Sending Lot shall have been released from that certain Amended and Restated Deed of Trust and Security Agreement encumbering Lot 34 for the benefit of Deutsche Bank, as agent, dated as of July 14, 2005 and recorded as Instrument No. 2005097407 among the Land Records of the Office of the Recorder of Deeds for the District of Columbia (the "Land Records") (the "**Existing Deed of Trust**").

(B)    **Purchaser.**  The obligation of Purchaser to proceed to Closing is subject to the satisfaction, at or prior to Closing, of each of the following conditions, any of which may be waived, in whole or in part, in writing by Purchaser in its sole discretion at or prior to Closing:

(i)    All of the representations and warranties of Seller set forth in this Agreement shall be true and correct in all material respects as if made on and as of the Closing Date.

(ii)    Seller shall have performed and complied in all material respects with all of the covenants required by this Agreement to be performed or complied with by Seller at or prior to Closing.

(iii)    The District and Seller shall have executed, acknowledged and delivered the TDR Covenant and the TDR Certificate.  The TDR Covenant and the TDR Certificate shall have been delivered to the Escrow Agent for recordation prior to or concurrently with Closing hereunder.  Seller shall have the ability to transfer all of the Development Rights for full and unrestricted use by Purchaser.

(iv)    Title to the Development Rights shall be good and marketable, and shall not be subject to any lien, mortgage, deed of trust, security interest, lease, restriction, option, defect, encumbrance, agreement or other matter whatsoever, whether recorded or unrecorded (other than (a) the DD Regulations and other provisions of applicable law, and (b) the TDR Covenant and the TDR Certificate).  Upon recordation of the TDR Certificate, the Development Rights shall be irrevocably and unconditionally vested in Purchaser, and shall not be subject to divestment, restriction or impairment on account of any circumstance or condition affecting the Sending Lot.

(v)    A final examination of title to the Development Rights shall disclose no title exceptions or other matter affecting the status of title (except as expressly contemplated in Section 2.3(B)(iv) above).

(vi)    No condemnation proceeding shall be instituted or threatened in writing with respect to the Development Rights, and no change in the DD Regulations or other applicable law shall have occurred, after the Effective Date (or be noticed in the District of Columbia Register after the Effective Date for hearing) that (a) as a result of the transfer of Development Rights contemplated by this Agreement, imposes upon Purchaser any materially adverse requirement, condition or restriction not contemplated by this Agreement or the TDR Certificate, (b) would prevent the Development Rights from fully and unconditionally

- 4 -

MR 24118

vesting in Purchaser, (c) would restrict the use of the Development Rights, or (d) would prevent Seller from selling all of the Development Rights to Purchaser in accordance with this Agreement.

(vi)    The District of Columbia shall have approved the Condominium Instruments and assigned an assessment and taxation lot number to the Sending Lot.

(v)    Seller shall have executed, acknowledged and recorded the Condominium Instruments.

(C)    **Failure of a Condition.**

(i)    If any condition precedent to a party's obligation to close hereunder is not satisfied by the Closing Date, such party shall by written notice to the other party specifying such failure of condition have the unilateral right either (i) to extend the Closing Date for up to three (3) months to allow the other party to satisfy such condition, (ii) to terminate this Agreement, or (iii) other than with respect to the failure of a condition described in Section 2.3(A)(iii) or Section 2.3(B)(iii) above, to waive such failed condition and proceed to Closing. The failure of a party to make the election described in the immediately preceding sentence shall be deemed to be an election to proceed in accordance with Section 2.3(C)(i). If one party elects to terminate this Agreement pursuant to Section 2.3(C)(ii) and the other party elects to extend the Closing Date pursuant to Section 2.3(C)(i), then the election to extend the Closing Date shall take precedence over the election to terminate this Agreement.

2.4    **Closing Deliveries.**

(A)    At Closing, Seller shall:

(i)    If the TDR Covenant has not previously been recorded among the Land Records, deliver the TDR Covenant to the Escrow Agent, as executed and acknowledged by Seller and the District of Columbia, for immediate recordation among the Land Records.

(ii)    Deliver the TDR Certificate to the Escrow Agent, as executed and acknowledged by Seller, Purchaser and the District of Columbia, for immediate recordation among the Land Records.

(iii)    Execute, acknowledge and deliver to Purchaser a certificate stating that the representations and warranties of Seller set forth in this Agreement are true and correct in all material respects as of Closing as if made on and as of the Closing Date.

(iv)    Execute, acknowledge and deliver to Purchaser a title affidavit (in customary form) as to mechanics' and materialmen's liens and parties in possession, and such other matters as reasonably may be requested by Purchaser, and certifying that there are no pending or outstanding suits, actions, causes of action, arbitrations, legal proceedings, administrative proceedings, settlements, judgments or other proceedings (including, without

MR 24119

limitation, any appeals thereof) (collectively, "**Claims**") against Seller or affecting all or any portion of the Development Rights.

        (v)     Execute, acknowledge and deliver to Purchaser and the Escrow Agent an affidavit as to non-foreign status (in form reasonably acceptable to Purchaser and the Escrow Agent).

        (vi)     Execute and deliver a settlement statement showing all of the payments, adjustments, and prorations provided for in this Agreement or otherwise agreed to by Seller and Purchaser ("**Settlement Statement**").

        (vii)     Execute, acknowledge (as appropriate) and deliver to the appropriate parties such additional documents as may be reasonably required to consummate the transactions contemplated herein (including, without limitation, evidence as may be reasonably required by Purchaser or the Escrow Agent with respect to the authority of persons executing documents on behalf of Seller).

        (B)     At Closing, Purchaser shall:

        (i)     Pay the Purchase Price to Seller in accordance with Section 1.3 above.

        (ii)     Execute, acknowledge and deliver to Seller a certificate stating that the representations and warranties of Purchaser set forth in this Agreement are true and correct in all material respects as of Closing as if made on and as of the Closing Date.

        (iii)     Execute and deliver the Settlement Statement.

        (iv)     Execute, acknowledge (as appropriate) and deliver to the appropriate parties such additional documents as may be reasonably necessary or customary to consummate the transactions contemplated herein (including, without limitation, evidence as may be reasonably required by Purchaser or the Escrow Agent with respect to the authority of persons executing documents on behalf of Purchaser).

        2.5    **Outside Date.**  Notwithstanding anything to the contrary contained in this Agreement, if, as of April 1, 2007 (the "**Outside Date**"), (a) the District of Columbia has not approved the Condominium Instruments, (b) Seller has not executed, acknowledged and recorded the Condominium Instruments, (c) the District of Columbia has not assigned an assessment and taxation lot number to the Sending Lot, (d) the TDR Covenant has not been recorded among the Land Records, (e) the District has not approved the TDR Certificate in writing in a form that satisfies the terms and conditions of this Agreement, and/or (f) the Sending Lot has not been released from the Existing Deed of Trust, then, during the period commencing on the day after the Outside Date and expiring on the date that on which (i) the District of Columbia has approved the Condominium Instruments, (ii) Seller has executed, acknowledged and recorded the Condominium Instruments, (iii) the District of Columbia has assigned an assessment and taxation lot number to the Sending Lot, (iv) the TDR Covenant has been

**MR 24120**

recorded among the Land Records, (v) the District has approved the TDR Certificate in writing in a form that satisfies the terms and conditions of this Agreement, and (vi) the Sending Lot has been released from the Existing Deed of Trust, Purchaser shall have the right to terminate this Agreement by written notice to Seller, in which event the Escrow Agent shall return the Deposit and any interest thereon to Purchaser, and neither Seller nor Purchaser shall have any further liability to each other under or in respect to this Agreement.

3.    **Representations and Warranties.**

3.1    **Purchaser's Representations and Warranties.** Purchaser represents and warrants to Seller that the following are true and correct as of the Effective Date:

(A)    Purchaser (i) is a limited liability company duly formed and validly existing under the laws of the District of Columbia, (ii) has full power and authority to enter into and consummate this Agreement without the consent of any person or entity (other than approval by the District of Columbia of the TDR Covenant and the TDR Certificate), and (iii) has authorized the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement. The person signing this Agreement on behalf of Purchaser is authorized and has the power to execute this Agreement on Purchaser's behalf.

(B)    Purchaser has received no notice, nor does Purchaser otherwise have actual knowledge, of any Claims relating to Seller or affecting all or any portion of the Development Rights (other than property damage or personal injury claims covered by insurance without reservation of rights).

(C)    The transfer of the Development Rights to Purchaser is not in violation of and does not constitute a breach of any agreement by which Purchaser is bound.

(D)    No action has been instituted by or against Purchaser under any state or federal bankruptcy, insolvency, reorganization, arrangement, receivership, dissolution or liquidation laws, or for the appointment of any receiver, custodian, liquidator or trustee of, or for Purchaser or any substantial part of its property.

Except as set forth in this Section 3.1, Purchaser makes no representations or warranties to Seller.

3.2    **Seller's Representations and Warranties.** Seller represents and warrants that the following are true and correct as of the Effective Date:

(A)    Seller (i) is a non-stock corporation duly formed and validly existing under the laws of the Commonwealth of Virginia, (ii) is qualified to do business in the District of Columbia, (iii) has full power and authority to enter into and consummate this Agreement without the consent of any person or entity (other than approval by the District of Columbia of the TDR Covenant and the TDR Certificate), and (iv) has authorized the execution, delivery and performance of this Agreement and the consummation of the transactions

- 7 -

**MR 24121**

contemplated by this Agreement. The person signing on behalf of Seller is authorized and has the power to execute this Agreement on Seller's behalf.

(B)    Seller holds all legal and beneficial rights to and interest in the Development Rights. No other person or entity has a security interest (except pursuant to the Existing Deed of Trust), option, refusal right, lease or other interest in any of the Development Rights.

(C)    Seller has not entered into any commitment or other agreement whose effect is to restrict or bind Purchaser in any way in connection with the full utilization of the Development Rights, other than the TDR Certificate.

(D)    Seller has received no notice, nor does Seller otherwise have actual knowledge, of any Claim or violation of law that remains unresolved relating to Seller and/or the Sending Lot (other than property damage or personal injury claims covered by insurance without reservation of rights) or the Development Rights or title to either the Sending Lot or the Development Rights.

(E)    No action has been instituted by or against Seller under any state or federal bankruptcy, insolvency, reorganization, arrangement, receivership, dissolution or liquidation laws, or for the appointment of any receiver, custodian, liquidator or trustee of, or for Seller or any substantial part of its property.

(F)    Seller is not a "foreign person," "foreign trust," or "foreign corporation" within the meaning of the United States Foreign Investment in Real Property Tax Act of 1980 and the Internal Revenue Code of 1986, as amended.

(G)    Seller has not received written notice of any actual, planned or threatened condition, action or proceeding not heretofore disclosed to Purchaser in writing that would adversely affect Seller's ability to transfer the Development Rights to Purchaser or Purchaser's ability to freely and fully utilize the Development Rights (including, without limitation, actual, planned, or threatened (i) rezoning actions, (ii) takings by eminent domain or condemnation, or (iii) any moratorium, law, regulation, ordinance, ruling, rule, or order that could restrict, impede or delay the approval of the TDR Covenant or the TDR Certificate by the relevant governmental officials and agencies.

Except as set forth in this Section 3.2, Seller makes no representations or warranties to Purchaser.

4.    **Pre-Closing Covenants.**

4.1    Seller is currently processing for approval by the District of Columbia a Transfer of Development Rights Covenant for the Sending Lot in the form attached hereto as <u>Exhibit B</u> ("**TDR Covenant**"); provided, however, that Seller shall have the right to make such changes to the TDR Covenant as may be required by the District of Columbia or as Seller may reasonably desire, provided that any such changes do not and will not adversely impact Seller's

- 8 -

MR 24122

or Purchaser's respective ability to perform under this Agreement or affect the vesting of the Development Rights in Purchaser, irrespective of any fact, circumstance or condition affecting the Sending Lot. Seller shall use commercially reasonable efforts to cause the District of Columbia (including, without limitation, the Zoning Administrator, the Office of Planning, the Office of the Attorney General and the Mayor) to approve and execute the TDR Covenant as soon as practicable.

4.2    Concurrently with the execution of this Agreement, Seller and Purchaser shall execute and acknowledge a Certificate of Transfer of Development Rights in the form attached hereto as <u>Exhibit C</u> ("**TDR Certificate**"), and Seller and Purchaser shall jointly process the same for approval by the District of Columbia. Seller shall use commercially reasonable efforts to cause the District of Columbia (including, without limitation, the Zoning Administrator, the Office of Planning, the Office of the Attorney General and the Mayor) to approve and execute the TDR Certificate as soon as practicable. Seller and Purchaser agree to make such changes to the TDR Certificate as may be required by the District of Columbia or as either party hereto may reasonably desire, provided that any such changes do not and will not adversely impact Seller's or Purchaser's respective ability to perform under this Agreement or affect the vesting of the Development Rights in Purchaser, irrespective of any fact, circumstance or condition affecting the Sending Lot.

4.3    Seller and Purchaser shall cooperate with the other in such manner as reasonably may be requested to cause the District of Columbia to approve and execute the TDR Certificate.

4.4    Prior to Closing, Seller shall provide Purchaser with copies of any written notices that Seller receives with respect to (i) any special assessments pertaining to or affecting the Development Rights, (ii) any condemnation or eminent domain proceedings affecting the Development Rights or (iii) any violation of any zoning, health, fire, safety, environmental or other law, regulation or code applicable to the Development Rights or that otherwise impair or affect Seller's ability to perform its obligations under this Agreement.

4.5    From and after the date hereof until Closing, Seller shall not enter into any agreements or other undertakings that would adversely affect in any way Seller's ability to convey all of the Development Rights in accordance with the terms hereof, or Purchaser's ability to utilize fully all of the Development Rights.

4.6    Seller shall in good faith use commercially reasonable efforts to cause, as soon as practicable (a) the District of Columbia to approve the Condominium Instruments and assign an assessment and taxation lot number to the Sending Lot, (b) the Condominium Instruments to be executed, acknowledged and recorded, and (c) the Sending Lot to be released from the lien of the Existing Deed of Trust. Seller shall notify Purchaser in writing (x) when the District of Columbia has approved the Condominium Instruments and assigned an assessment and taxation lot number to the Sending Lot, (y) when the Condominium Instruments have been executed, acknowledged and recorded and (z) when the Sending Lot has been released from the lien of the Existing Deed of Trust. Seller shall endeavor in good faith to provide substantive responses to the reasonable periodic written inquiries from Purchaser concerning the status and

- 9 -

**MR 24123**

anticipated timing of such items.

5.    **Events of Default and Remedies.**

5.1    **Events of Default.**

(A)    **Purchaser.** Each of the following shall constitute an event of default ("**Event of Default**") by Purchaser hereunder:

(i)    if Purchaser fails to pay the Purchase Price at Closing;

(ii)    if Purchaser fails to post the Deposit pursuant to Sections 1.3 and 2.1 herein;

(iii)    if Purchaser fails to comply in any material respect with any of the terms, conditions, or covenants applicable to Purchaser set forth in this Agreement;

(iv)    if any representation or warranty of Purchaser under this Agreement is not true or correct as of the date made in any material respect; or

(v)    If Purchaser becomes insolvent, fails to pay its debts as they become due, files a petition for relief, or for any composition, rearrangement, extension, reorganization or other relief under any bankruptcy law or under any other law for the relief of debtors now or hereafter existing, shall make a settlement with or general arrangement or assignment for the benefit of creditors, or if an order for relief pursuant to any federal or state bankruptcy or insolvency law shall be granted with respect to Purchaser, and in the event of any involuntary bankruptcy, such proceeding is not discharged within 60 days of the date of filing.

(B)    **Seller.** Each of the following shall constitute an Event of Default by Seller hereunder:

(i)    if Seller fails to comply in any material respect with any of the terms, conditions, or covenants applicable to Seller set forth in this Agreement (including, without limitation, Seller's obligation to convey the Development Rights in accordance with the terms of this Agreement);

(ii)    if any representation or warranty of Seller under this Agreement is not true or correct as of the date made in any material respect; or

(iii)    If Seller becomes insolvent, fails to pay its debts as they become due, files a petition for relief, or for any composition, rearrangement, extension, reorganization or other relief under any bankruptcy law or under any other law for the relief of debtors now or hereafter existing, shall make a settlement with or general arrangement or assignment for the benefit of creditors, or if an order for relief pursuant to any federal or state

**MR 24124**

bankruptcy or insolvency law shall be granted with respect to Seller, and in the event of any involuntary bankruptcy, such proceeding is not discharged within 60 days of the date of filing.

(C)    **Remedies Upon an Event of Default.**

(i)    **Seller's Remedies.**  Upon the happening of an Event of Default by Purchaser, Seller shall have the absolute right, at its option and election, as its sole and exclusive remedy in lieu of any other remedy, to terminate this Agreement immediately by written notice to Purchaser and if the Deposit has been delivered as provided for herein, maintain the Deposit and any interest thereon as liquidated damages, whereupon this Agreement shall be deemed to be terminated and the parties shall have no further liability or obligations under this Agreement.

(ii)    **Purchaser's Remedies.**  Upon the happening of an Event of Default by Seller, Purchaser shall have the absolute right, at its option and election, to elect one of the following, as its sole remedy in lieu of any other remedy:

(a)    terminate this Agreement immediately by written notice to Seller, whereupon, if the Deposit has been delivered as provided for herein, the Deposit with all interest thereon shall be promptly returned to Purchaser, this Agreement shall be deemed to be terminated and the parties shall have no further liability or obligations under this Agreement; or

(b)    provided that the Purchaser is ready, willing and able to tender the Purchase Price and to pay all other costs that are the responsibility of Purchaser as required by this Agreement, institute appropriate proceedings to specifically enforce each of the terms, covenants and other provisions of this Agreement.

Notwithstanding the foregoing, if the remedy of specific performance is not a viable or available remedy for Purchaser, then Purchaser shall have the right to initiate a suit or other legal proceeding to recover from Seller damages in an amount equal to the difference, if any, between (1) the then current market value for one hundred ninety-two thousand five hundred twenty-four (192,524) square feet of TDRs minus (2) the Purchase Price under this Agreement.

The above remedies and rights of Purchaser shall be exclusive and not cumulative. Purchaser shall have the absolute right to resort to any of said remedies, to the exclusion of the other, in the event of any such Event of Default by Seller.

Notwithstanding anything set forth herein to the contrary, prior to declaring an Event of Default, Purchaser and Seller shall each provide written notice thereof to the other and shall provide ten (10) business days to cure any such default.

- 11 -

**MR 24125**

6.     **General Provisions.**

6.1     **Notices.**  All notices, payments and other required communications ("Notices") to the parties shall be in writing, and shall be addressed respectively as follows:

|  |  |
|---|---|
| If to Seller: | Freedom Forum, Inc.<br>1101 Wilson Boulevard<br>Arlington, Virginia  22209<br>Attn:  Peter Prichard |
| with copy to: | CarrAmerica Urban Development, LLC<br>1850 K Street, N.W., Suite 500<br>Washington, D.C.  20006<br>Attn:  Judy Renfrew |
| If to Purchaser: | Montgomery Road TDR, LLC<br>c/o Greenebaum and Rose Associates<br>5301 Wisconsin Avenue, N.W., Suite 510<br>Washington, D.C.  20015<br>Attn:  Steve Braesch |
| with a copy to: | Pillsbury Winthrop Shaw Pittman LLP<br>2300 N Street, N.W.<br>Washington, D.C. 20037<br>Attn: Christian A. Buerger, Esq. |
| If to Escrow Agent: | Commonwealth Land Title Insurance Company<br>1015 15th Street, N.W., Suite 300<br>Washington, D.C. 20005<br>Attn:  Sally Webb |

All Notices shall be given (i) by personal delivery to the applicable party; or (ii) by certified mail, return receipt requested.  All Notices shall be effective and shall be deemed delivered upon actual receipt (or refusal of receipt).  A party hereto may change its address by written notice to the other party.

6.2     **Waiver.**  The failure of Seller or Purchaser to insist on the strict performance of any provision of this Agreement or to exercise any right, power or remedy upon a breach hereof shall not constitute a wavier of any provision of this Agreement or limit Seller's or Purchaser's right thereafter to enforce any provision or exercise any right.

6.3     **Modification.**  No modification of this Agreement shall be valid unless made in writing and duly executed by authorized representatives of Purchaser and Seller.

**MR 24126**

6.4    **Governing Law.**  This Agreement shall be governed by and interpreted in accordance with the laws of the District of Columbia (without regard to conflicts of laws principles).

6.5    **Further Assurances.**  Each of the parties hereto agrees to take such actions and execute such additional instruments from time to time as may be reasonably necessary or convenient to implement and carry out the intent and purpose of this Agreement.

6.6    **Entire Agreement; Successors and Assigns.**  This Agreement contains the entire understanding of the parties which supersedes all prior agreements and understandings between the parties relating to the subject matter hereof.  This Agreement shall be binding upon and inure to the benefit of the respective successors, affiliates and assigns of Seller and Purchaser.  Neither this Agreement, nor the performance of any of the provisions contained herein, shall be assigned, subcontracted or delegated by Seller or Purchaser, without the express prior written consent of the other party which may be withheld, conditioned or delayed in the other party's sole discretion.  Notwithstanding the foregoing, Purchaser may assign this Agreement (and/or assign its rights and delegate its obligations under this Agreement), without the consent of Seller, to (i) any principal of Purchaser, (ii) any entity in which any principal of Purchaser is an owner or investor, directly or indirectly or (iii) the owner or contract purchaser of Lot 432 in Square 674 in the District of Columbia.  Seller shall, within five (5) business days after Purchaser's written request therefor from time to time, execute such further assurances and otherwise reasonably cooperate with Purchaser in connection with any such assignment, in each case, as Purchaser may reasonably request.

6.7    **Disputes.**  If any dispute arises under, or relates to, this Agreement, the substantially losing party hereby agrees to promptly reimburse the substantially prevailing party for all fees, costs and expenses incurred by the substantially prevailing party, including without limitation reasonable attorneys' fees, expert fees and collection costs, whether or not formal proceedings are instituted.

6.8    **Exhibits.**  The following exhibits are attached hereto and made a part of this Agreement:

|            |                              |
|------------|------------------------------|
| Exhibit A: | Legal Description of Lot 34   |
| Exhibit B: | TDR Covenant                 |
| Exhibit C: | TDR Certificate              |

6.9    **Order of Priority.**  In the event of any conflict between this Agreement and any exhibit attached hereto, the terms of this Agreement shall be controlling.

6.10    **Severability.**  In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

- 13 -

**MR 24127**

6.11    **Counterparts.**  This Agreement may be executed in any number of counterparts all of which taken together shall constitute one and the same instrument and any of the parties or signatories hereto may execute this Agreement by signing any such counterpart.

6.12    **Interpretation.**  Wherever the singular number is used herein, the same shall include the plural; the use of any gender shall include all genders.  The headings set forth herein are provided solely for convenience and shall not be considered when interpreting the intention of the parties hereto.

6.13    **Brokers.**  Seller warrants to Purchaser, and Purchaser warrants to Seller, that neither of them has employed any broker, agent or finder in carrying on the negotiations, or had any dealing with any real estate broker, agent or finder in connection with this transaction. Seller and Purchaser shall indemnify and hold each other harmless against all loss, liability or expense, including reasonable attorneys' fees and litigation costs, incurred by the other to the extent that one or the other is shown to be in breach of the foregoing warranties.

6.14    **Study Period.**  On the Effective Date, Seller shall deliver to Purchaser all documents reasonably necessary to satisfy the Purchaser that Seller is the sole owner of all right, title and interest in and to the Development Rights and that the Development Rights are fully vested and transferable by Seller in accordance with the terms of this Agreement (including, without limitation, a copy of Seller's most recent title insurance commitment or policy with respect to the entirety of the Sending Lot and all underlying exceptions of which Seller has copies).  For sixty (60) days following the Effective Date (the "**Study Period**"), Purchaser shall undertake, at its own cost and expense, a review and examination of the documents provided by Seller and of all matters relating to the Development Rights (including, without limitation, the current zoning category of the Sending Lot, the development rights attached to the Sending Lot and the transfer and utilization of the Development Rights as Purchaser deems appropriate).  At any time during the Study Period, Purchaser shall have the right to terminate this Agreement by written notice to Seller, in which event the Escrow Agent shall return the Deposit and any interest thereon to Purchaser, and neither Seller nor Purchaser shall have any further liability to each other under or in respect to this Agreement.

6.15    **No Recordation**.  Neither Seller nor Purchaser shall record this Agreement or any memorandum of this Agreement in any public records.

7.    **Deposit and Escrow.**

(a)    Escrow Agent shall hold the Deposit in escrow in an interest-bearing account at a federally-insured financial institution in the Washington metropolitan area.  All interest earned on the Deposit shall be and become part of the Deposit.  Escrow Agent shall release the Deposit as follows:

(i)    If Escrow Agent receives written notice from Purchaser ("**Purchaser Notice**") stating that Purchaser is entitled to the return of the Deposit in accordance

MR 24128

with this Agreement, then Escrow Agent shall immediately deliver a copy of the Purchaser Notice to Seller. If on or before the date that is five (5) business days following Seller's receipt of the Purchaser Notice, Seller objects in writing ("**Seller Objection Notice**") to the return of the Deposit to Purchaser, then Escrow Agent shall not return the Deposit to Purchaser. If Seller does not deliver a Seller Objection Notice to Escrow Agent on or before the date that is five (5) business days following Seller's receipt of the Purchaser Notice, then Escrow Agent shall promptly return the Deposit to Purchaser.

(2)     If Escrow Agent receives written notice from Seller ("**Seller Notice**") stating that Seller is entitled to the Deposit in accordance with this Agreement, then Escrow Agent shall immediately deliver a copy of the Seller Notice to Purchaser. If on or before the date that is five (5) business days following Purchaser's receipt of the Seller Notice, Purchaser objects in writing ("**Purchaser Objection Notice**") to the release of the Deposit to Seller, then Escrow Agent shall not release the Deposit to Seller. If Purchaser does not deliver a Purchaser Objection Notice to Escrow Agent on or before the date that is five (5) business days following Purchaser's receipt of the Seller Notice, then Escrow Agent shall promptly release the Deposit to Seller.

(b)     In the event of any dispute between Seller and Purchaser regarding the disbursement of the Deposit, or if Escrow Agent receives conflicting demands or instructions with respect to the disbursement of the Deposit, then Escrow Agent shall withhold disbursement of the Deposit until it receives either (i) joint written instructions from Seller and Purchaser with respect to the disbursement of the Deposit or (ii) an order binding upon it from a court of competent jurisdiction with respect to the disbursement of the Deposit. Notwithstanding the foregoing, in the event of any such dispute or conflicting demands or instructions, Escrow Agent shall have the right to deliver the Deposit into the registry of any court of competent jurisdiction, and Escrow Agent thereupon shall be released from any further liabilities or obligations with respect to the Deposit.

(c)     Escrow Agent shall receive no compensation for its services performed pursuant to this Agreement except for reasonable attorneys' fees and costs incurred as a result of any dispute between Seller and Purchaser. Such fees and costs shall be borne by the parties in proportion to the degree of fault of each as adjudged by a court of competent jurisdiction.

(d)     Escrow Agent may act upon any instrument or writing believed by it in good faith to be genuine and executed by the proper person, and shall not be liable in connection with the performance of its duties except in the event of the willful misconduct or negligence of Escrow Agent or its agents or employees.

(e)     In the event there exists a dispute between Seller and Purchaser as to the disbursement of the Deposit in accordance with this Section 7, and a court of competent jurisdiction determines that the Deposit should have been released to Seller or returned to Purchaser, then in addition to all other amounts payable under this Agreement, and notwithstanding any limitation set forth in this Agreement on the liability of any party, the non-prevailing party in such litigation or proceeding shall pay all fees and expenses (including court costs and reasonable attorneys' fees) incurred by the other party in obtaining the release of the

**MR 24129**

Deposit.

[signatures on following page]

MR 24130

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed under seal as of the date first above written.

SELLER:

WITNESS:                                  FREEDOM FORUM, INC.,
                                          a Virginia not-for-profit corporation

*Emily Nicholn*                           By: *Nicole F. Mandeville*
                                          Name: Nicole F. Mandeville
                                          Title: Sr VP! Treasurer


PURCHASER:

WITNESS:                                  MONTGOMERY ROAD TDR, LLC,
                                          a District of Columbia limited liability company

                                          By: _____ [SEAL]
_____                        Sam G. Rose
                                              Managing Member


CONSENT

    The undersigned Escrow Agent has reviewed this Agreement and consents to the performance of each term and condition applicable to the Escrow Agent in accordance with the provisions set forth herein.

WITNESS:                                  ESCROW AGENT:

                                          COMMONWEALTH LAND TITLE INSURANCE
                                          COMPANY

_____                    By:    _____
                                          Name:  _____
                                          Title: _____


- 17 -

**MR 24131**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed under seal as of the date first above written.

<div style="margin-left: 40%;">

**SELLER:**

</div>

WITNESS:

<div style="margin-left: 40%;">

**FREEDOM FORUM, INC.,**
a Virginia not-for-profit corporation

</div>

_____        By: _____
                                         Name:
                                         Title:

<div style="margin-left: 40%;">

**PURCHASER:**

</div>

WITNESS:

<div style="margin-left: 40%;">

**MONTGOMERY ROAD TDR, LLC,**
a District of Columbia limited liability company

</div>

By: _____ [SEAL]
         Sam G. Rose
         Managing Member

<div align="center">

**CONSENT**

</div>

The undersigned Escrow Agent has reviewed this Agreement and consents to the performance of each term and condition applicable to the Escrow Agent in accordance with the provisions set forth herein.

WITNESS:

<div style="margin-left: 40%;">

**ESCROW AGENT:**

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**

</div>

_____        By: _____
                                           Name: SARAH ECKERT WEBB
                                           Title: VICE PRESIDENT

<div align="center">

- 17 -

</div>

MR 24132

**EXHIBIT A**
**(Lot 34)**

**LEGAL DESCRIPTION OF LOT 34**

All that certain lot or parcel of land together with all improvements thereon located and being in the City of Washington in the District of Columbia, more particularly described as follows:

Lot 34 in Square 491, in a subdivision made by Freedom Forum, Inc., as per plat recorded in Book 197, Page 174, in the records of the Surveyor of the District of Columbia.

**MR 24133**

**EXHIBIT B**

**(TDR Covenant)**

MR 24134