**EXHIBIT 32**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MONTGOMERY ROAD I LIMITED PARTNERSHIP,**<br><br>**Plaintiff/ Counter-Defendant,**<br><br>and<br><br>**MONTGOMERY ROAD TDR, LLC,**<br><br>**Third-Party Defendant,**<br><br>v.<br><br>**VIAD CORP,**<br><br>**Defendant/ Counter-Plaintiff/ Third-Party Plaintiff.** | Case No. 1:06CV00344 (HHK) |

### DECLARATION OF STUART I. SMITH
### IN SUPPORT OF OPPOSITION OF MONTGOMERY ROAD I
### LIMITED PARTNERSHIP AND MONTGOMERY ROAD TDR, LLC
### TO DEFENDANT VIAD'S MOTION FOR SUMMARY JUDGMENT

I, Stuart I. Smith, affirm the following under penalties of perjury:

1.  I am at least 18 years of age, and the information contained herein is from my personal knowledge.

2.  I am an MAI-designated appraiser by the Appraisal Institute. The MAI membership designation is held by appraisers who are experienced in the valuation and evaluation of commercial, industrial, residential and other types of properties, and who advise clients on real estate investment decisions.

3.  I am the President of Millennium Real Estate Advisors, Inc., which is located at 2450 Virginia Avenue, N.W., Washington, D.C.

4.      On June 24, 2006, Mr. Steven M. Halbert of Cushman and Wakefield of Washington, D.C., Inc. ("C&W"), prepared an appraisal report for the development site at 90 K Street, N.E., Washington, D.C., which I reviewed pursuant to my engagement as an expert on behalf of Montgomery Road I Limited Partnership and Montgomery Road TDR, LLC in this litigation.

5.      On February 16, 2007, I prepared an Appraisal Review of Mr. Halbert's report. A true and correct copy of my Appraisal Review is attached as Exhibit A.

6.      Based on the scope of my work assignment, the C&W conclusion of FAR unit value, predicated on the information provided and analyzed in Mr. Halbert's report is appropriate and reasonable. However, this unit value was applied to an incorrectly developed FAR-density of 997,229 FAR feet. Thus, my criticism is mathematically driven. Accordingly, if we adopt Mr. Halbert's value conclusion of $65 per FAR and apply it to the permitted density of 675,207 FAR feet, the results would be $43,888,455.

I swear under the penalties of perjury of the District of Columbia that the facts set forth above are true and correct and made from my personal knowledge.

Executed under the penalties of perjury in the District of Columbia, on the 18th day of April, 2007.

_____
Stuart I. Smith

**EXHIBIT A**

# MILLENNIUM
### REAL ESTATE ADVISORS, INC.



APPRAISAL REVIEW:

90 K Street, NE
Washington, DC

PREPARED FOR:
Mr. Dale Cooter
Cooter, Mangold, Tompert & Karas, LLP
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015

#07-012

# MILLENNIUM
REAL ESTATE ADVISORS, INC.

February 16, 2007

Mr. Dale Cooter
Cooter, Mangold, Tompert & Karas, LLP
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015

Re:   Appraisal Review
      Development Site
      90 K Street, NE
      Washington, DC  20002

Dear Mr. Cooter:

In fulfillment of our agreement, MILLENNIUM REAL ESTATE ADVISORS, INC. is pleased to transmit our narrative report reviewing the self-contained appraisal report for the development site at 90 K Street, NE, Washington, DC; prepared by Mr. Steven M. Halbert, MAI, Cushman and Wakefield of Washington DC, Inc.

The effective date of the report is June 24, 2006. The report was prepared for Viad Corporation of Phoenix, Arizona.

The intended users of our report are the law firm of Cooter, Mangold, Tompert & Karas, LLP, and any legitimate judicial authority that may have jurisdiction over this property. The purpose of this review is to assist the client in understanding the quality, completeness, adequacy, relevance, appropriateness and reasonableness of the data and conclusions. It may not be distributed to or relied upon by other persons or entities without written permission of the Appraiser. The report was prepared, by Stuart I. Smith, MAI.

The report does not include development of my own opinion of value, per se, but does include a discussion of total value for the subject report in order to clarify how the FAR value conclusion for vacant land may have been incorrectly applied.

In that regard, we have introduced some additional market information that should have been considered as of the date of value and, some additional information regarding the pending/actual sale of the property, which may not have been know to Mr. Halbert at the time of his report. The sale information was not used by the reviewer in developing an opinion as to the quality of the work under review.

The scope of work for this assignment includes a reading of the report materials and additional research concerning Transferable Development Rights (TDRs) in Washington, DC. There are

*February 16, 2007*
*Page 2*

no 'extraordinary' or 'hypothetical' assumptions applied to this review. The scope of our assignment did not include developing our own opinion of FAR/unit value.

**SELECTED PROPERTY FACTORS:**

- Date of value for original appraisal 06/24/06
- Date of value for the review 02/08/07
- Land area: 2.38 acres; 103,878 square feet
- Legal description: Square 674, Lot 432
- Site characteristics: rectangular, generally level lot with good access and visibility
- Current use: surface parking lot
- Current zoning: C-3-C
- TDRs: property is in a receiving zone

In developing this appraisal review we have developed the following opinions, in light of our scope of work:

| Comment | Conclusion |
| --- | --- |
| - Provide an opinion of the completeness of the material under review | Acceptable |
| - Develop an opinion as to the apparent adequacy and relevance of the data and the propriety of any adjustments to the data | Acceptable |
| - Develop an opinion as to the appropriateness of the appraisal methods and techniques used | Acceptable; however, given the changing nature of this market, a land residual approach may have been useful. |
| - Develop an opinion as to whether the analyses, opinions, and conclusions are appropriate and reasonable | Unacceptable |

*February 16, 2007*
*Page 3*

The Cushman & Wakefield appraisal applied an indicated as-is value of $65 per FAR foot to a stated allowable density of 997,229 square feet. Their report indicated that the maximum FAR was 9.6 and, in applying this density, acknowledges that the site is "a receiving zone for transferable development rights (TDRs).

In discussing "Zoning Conformance" for the property, the report states:

> *The subject lies in one of the downtown receiving zones for transferable development rights, the acquisition of which would allow the developers to increase the density of their development. The potential allowable FAR for the site is 10.0 with a height of 130 feet. The developer reportedly has plans for a 9.6 FAR multi-building development.*

The report then proceeds to value the property at a 9.6 FAR; or 997,229 FAR feet. This value is presented as the "as is market value of the fee simple interest", without any "extraordinary" or "hypothetical" qualifications.

The permitted density in a C-3-C zone is 6.5. Applying this to the subject 103,878 square feet of land, the resulting FAR would be 675,207 feet. The Zoning ordinance also indicates that the subject lot and square is a 'receiving zone' for additional TDRs up to a 10.0 FAR.

Typically there are two concepts with regard to development in a TDR receiving zone. First, there is the physical and legal capacity for development inherent in underlying real estate (land and improvements) and zoning. Second, there are potential TDRs. In our view, TDRs are a stand-alone commodity that is most frequently traded separate from the real estate. We know of no restrictions on the separate sale or transfer of TRDs. For example, if a developer owned several sites in a 'receiving zone', it might make sense to purchase TDRs as a separate commodity, and subsequently apply those additional development rights to whatever parcel they would most benefit.

Recognizing, therefore, that TDRs are a separate commodity, it makes sense that the "as is" value would have to be based on the underlying 675,207 FAR feet unless the report specified that the value was subject to an "Extraordinary Assumption", which, if found to be false, could alter the appraiser's opinion or conclusions. *Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal or economic characterizes of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis."*

Accordingly, applying the C&W conclusion of $65 per FAR to the permitted density of 675,207 FAR feet, the indicated "as is" value of the fee simple interest drops to $43,900,000; rounded.

February 16, 2007
Page 4

The following issue is related to ascertaining development rights but may go beyond the information available to Mr. Halbert in preparing the original appraisal report.

It is our experience that vacant land with potential additional development rights (in the form of TDRs) tend to trade in two separate transactions:

1. Unless a site has been fully assembled and its development plan reviewed and approved, the underlying ground will be typically sold based on the property's current zoning potential; and

2. Potential TDRs are typically acquired in a separate transaction by the property's ownership directly from the sellers of those TDRs.

Thus, it is our opinion, which follows local precedent, that in valuing a site having only 'potential' TDRs, the *as-is value* should be limited to the property rights approved by the District as a matter of right. In this instance, the subject property consists of 675,207 FAR feet, not 997,229 FAR feet.

Finally, in terms of the applicability of the $65 FAR price, we believe that the C&W conclusion of unit value is appropriate and reasonable based on the information provided and analyzed in Mr. Halbert's report. The scope of our assignment did not include developing an alternate opinion of FAR value.

We see no information in the original appraisal report that would warrant further adjustment based on the lower FAR applicable to the "as-is" value.

### CONCLUSION:

While our assignment did not include developing an alternate opinion of FAR value, we do take issue with the methodology for determining the FAR density for the as-is value. It is our opinion that the as-is value of the subject parcel in the original appraisal report is considerably overstated.

At some point prior to October 11, 2006, a "Land Purchase and Sale Agreement" was entered into between Montgomery Road I Limited Partnership and TC MidAtlantic Development, Inc. A "First" and "Second" Amendment to that agreement were subsequently developed. This information was made available to use. Accordingly, we have the benefit of additional information that may not have been available to the original appraiser. This information is NOT being used to discredit the original appraiser's opinion of value.

According to these documents and the public record, the property sold on January 12, 2007 for $46,036,528. The sale (a) included the 103,878 square feet of land located at 90K Street, NE, (b) noted that the site was currently zoned C-3-C, and (c) was in a receiving zone for purposes of accepting TDRs. Further, that the purchaser agreed and was obligated (in a separate purchase contract) to acquire, for additional consideration, certain TDRs from the Seller.

*February 16, 2007*
*Page 5*

Based on our understanding the "Land Purchase and Sale Agreement", the January 2007 sale was ±$46 million for 675,207 FAR feet, which equated to roughly $68 per FAR foot. This is generally consistent with the C&W FAR price.

Accordingly, based on our stated scope of work, we believe that the C&W conclusion of FAR unit value is appropriate and reasonable predicated on the information provided and analyzed in Mr. Halbert's report. However, we believe that this unit value was applied to an incorrectly developed FAR-density, which lead to a gross overstatement of the as-is market value of the fee simple interest in the subject property, as of the June 24, 2006.

Respectfully submitted,
MILLENNIUM REAL ESTATE ADVISORS, INC.

Stuart I. Smith, MAI

## Appraisal Report Certification

I certify that, to the best of my knowledge and belief:

- The facts and data reported by the reviewer and used in the review process are true and correct.

- The analyses, opinions, and conclusions in this review report are limited only by the assumptions and limiting conditions stated in this review report and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this review or from its use.

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute, which include the *Uniform Standards of Professional Appraisal Practice*.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- I have made a personal inspection of the subject property of the work under review.

- No one provided significant appraisal, appraisal review, or appraisal consulting assistance to the person signing this certification.

- As of the date of this report, I Stuart I. Smith, MAI, has completed the continuing education program of the Appraisal Institute.

*[signature]*

_____
Signature