# EXHIBIT 70

# Grant Thornton

Accountants and Business Advisors

January 31, 2007

Ms. Eve Fiorucci
Assistant Director – Real Estate
Viad Corp.
1850 North Central Avenue
Phoenix, AZ 85077

Re: Viad Corp. and Montgomery Road I Limited Partnership

Dear Ms. Fiorucci:

Pursuant to your request and in accordance with our engagement letter dated January 30, 2007, we have addressed the following accounting and financial reporting points below. We understand that our services are intended to assist Viad Corp., related to a dispute with the Montgomery Road I Limited Partnership arising from the Cash Participation Agreement dated November 30, 1987 (the "Agreement"). This report may only be used for the aforementioned purpose, and may not be distributed or used for other purposes without the express written consent of Grant Thornton LLP.

The objective of our report is to provide our accounting interpretation of certain terms and comparison of the basis of accounting presented in the special-purpose statements of assets and liabilities of Montgomery Road I Limited Partnership (90 K Street property only) as of December 31, 1999 and 1998, and the related special-purpose statements of income and partners' capital and cash flows for the year ended December 31, 1999 and for the period December 9, 1987 to December 31, 1998 and supplementary schedules, compiled by Katz, Abosch, Windesheim, Gershman & Freedman, P.A., report dated, June 30, 2000 (hereinafter referred to as the "Special Purpose Financial Statements").

Our services were provided in accordance with the American Institute of Certified Public Accountants Statement on Standards for Consulting Services and accordingly do not constitute an audit, review or other attestation service the purpose of which is the expression of an opinion on a set of financial statements or part thereof. Accordingly, we do not express any such opinion.

Reference to "we", "us" or "our" refers to me and other Grant Thornton LLP professionals working at my direction and under my supervision. The conclusions and opinions contained herein are based on our experience and training as CPAs and business consultants and do not constitute a legal opinion.

Our assignment included an analysis of the following:

- Special Purpose Statements

- Sections 2.3 and 2.6 of the Agreement

Tysons Executive Plaza II
2010 Corporate Ridge, Suite 400
McLean, VA 22102-7838
T 703.847.7500
F 703.848.9580
W www.grantthornton.com

Grant Thornton LLP
US member of Grant Thornton International

Ms. Eve Fiorucci
Viad Corp.
January 31, 2007
Page 2

**Grant Thornton**

The following summarizes our responses to your inquiries:

1. **Define the term "cash basis accounting" referenced in paragraph 2.3(a) of the Agreement.**

   Cash basis accounting is the basis of accounting in which accounting transactions are recorded when the cash transaction occurs, rather than when the obligation is incurred (as is predicated under the accrual basis of accounting). Under the cash basis of accounting, revenue is recorded upon the receipt of the cash, and costs are recorded when the entity disburses the cash.

2. **Define the term "modified cash basis of accounting."**

   The modified cash basis is a hybrid method that combines elements of the cash and accrual bases of accounting (AICPA Practice Aid: "Preparing and Reporting on Cash and Tax Basis Financial Statements"). Common accepted modifications to cash basis accounting include capitalization and depreciation of cash transactions for fixed assets and accruing income taxes.

3. **Compare and contrast the basis of accounting used in the preparation of the Special Purpose Financial Statements to the Generally Accepted Accounting Principles basis of accounting referenced in paragraph 2.6 of the Agreement.**

   The description of the basis of accounting used in the preparation of the Special Purpose Financial Statements, contained in Footnote 1 to the Special Purpose Financial Statements, titled Purpose and Basis of Presentation, does not provide a sufficient enough description of the basis of accounting used in the Special Purpose Financial Statement presentation to enable us to specifically quantify either the differences or similarities of the basis of accounting used in the preparation of the Special Purpose Financial Statements to Generally Accepted Accounting Principles.

   As requested, the following is a general comparison of special purpose financial statements to financial statements prepared in accordance with Generally Accepted Accounting Principles.

   Special purpose financial statements are financial statement(s) prepared either, on a uniquely defined basis of accounting that, as indicated by the insertion of the description "Special" within their title, should only be used for a "special" purpose and not for general purposes or distribution, or an incomplete financial statement presentation that is otherwise in conformity with Generally Accepted Accounting Principles. Accordingly, special purpose financial statements are, by their vary nature, not prepared in accordance with Generally Accepted Accounting Principles or a widely used "Other Comprehensive Basis of Accounting."

   In contrast, financial statements prepared in accordance with Generally Accepted Accounting Principles are prepared on a basis that is consistent with accounting principles, and the prescribed hierarchy of those principles when conflict between principals exists, established by standard setters (e.g., Financial Accounting Standards Board, American Institute of Public Accountants, Securities and Exchange Commission) as well as practices that are widely recognized and prevalent.

Ms. Eve Fiorucci
Viad Corp.
January 31, 2007
Page 3

**Grant Thornton**

4.  Compare and contrast the level of assurance provided in "compiled" financial statements, as referenced in the June 30, 2000 report of Katz, Abosch, Windesheim, Gershman & Freedman, P.A., to the level of assurance provided by an independent public accounting in rendering an "unqualified opinion" on financial statements, as referenced in paragraph 2.6 of the Agreement.

    As described within the second paragraph of the June 30, 2000 report of Katz, Abosch, Windesheim, Gershman & Freedman, P.A., "A compilation is limited to presenting in the form of special-purpose financial statements information that is the representation of management." Also, as described within this paragraph, in compiling management's information, Katz, Abosch, Windesheim, Gershman & Freedman, P.A. did not audit or review the information and disclaims any opinion or any other form of assurance on the Special Purpose Financial Statements.

    In contrast, an "unqualified opinion" is the highest form of assurance, in accordance with the Professional Standards of the American Institute of Certified Public Accountants, an independent certified public accountant can provide. It is an opinion that financial statements are presented fairly, in all material respects, in accordance with the accounting principles and the basis of accounting presented.

In addition to the Special Purpose Statements and Sections 2.3 and 2.6 of the agreement, I relied on Statements on Auditing Standards (SAS) numbers 62 and 69 and the AICPA practice aid "Preparing and Reporting on Cash and Tax Basis Financial Statements."

We reserve the right to modify this report and the opinions contained herein should additional facts come to our attention. Our fees for this engagement are based on our agreed upon hourly billing rates and are in no way contingent on the outcome of the dispute.

Sincerely,

Kirk T. Rogers, CPA
Partner

Attachments:   Resume of Kirk T. Rogers
               Engagement letter dated January 30, 2007

cc:   Rodney F. Page, Esq.
      Bryan Cave LLP

# Exhibit A

# KIRK T. ROGERS, CPA

**EDUCATION:** B.S. in Accounting, Magna Cum Laude, 1984
Robert H. Smith School of Business, University of Maryland, College Park, Maryland

CPA, Maryland, 1986
CPA, New York, 2005
CPA, California, 2006
CPA, Virginia, 2006

**PROFESSIONAL EXPERIENCE:**

**Grant Thornton LLP** — McLean, Virginia
*Partner, December, 2006 to Present*
Engagement partner for assurance and business consulting services for clientele principally within the real estate and telecommunications industries.

**Grant Thornton LLP** — Baltimore, Maryland
*Partner, June, 2006 to November, 2006*
Engagement partner for assurance and business consulting services for clientele principally within the real estate and telecommunications industries.

**Reznick Group, P.C.,** — Bethesda, Maryland
*Principal, 1994*
*Audit Senior Manager, 1992*
*Audit Manager, 1990*
*Audit Supervisor, 1988*

- Between 1994 and 2006, served as Principle responsible for accounting, auditing and consulting services for numerous clients. Prior to 1994, various positions of progressive responsibility providing accounting, auditing and consulting services.

**DynAccSys** — Silver Spring, Maryland
*Business Unit Leader, October, 2002 to February, 2003*
- Continued the implementation of outsourcing concept that centrally processed client's accounting and reporting data, enabling them to access their information via the internet.

**Clark Construction Group, Inc.** — Bethesda, Maryland
*Senior Accountant, 1986 – 1988*
- Prepared quarterly consolidation, reconciliation work papers, and financial reporting documentation for all business lines.
- Oversaw key functional accounting areas including accounts payable, general ledger maintenance of parent entity and operations of select business units.

**PricewaterhouseCoopers**                                                  Washington, DC
*Audit Associate, 1984 - 1986*
- Performed financial statement audits. Clients included MCI and the Washington Post.

**RECOGNITION:**
- AICPA Peer Review Team Leader and Reznick Group Inter-office peer review team member.
- Participated actively in the developing the firm's internal audit programs and audit methodologies and staff training and professional development.
- Actively participated in recruiting events for attracting college graduates and experienced professionals.
- Served as recurring guest lecturer at the University of Maryland for Audit Theory and Practice (BMGT 422) and Business Systems (BMGT 326).
- Treasurer, The Woods Academy.

**TESTIMONY IN LAST FOUR YEARS:**
- None

# Exhibit B

# Grant Thornton

Accountants and Business Advisors

January 30, 2007

Ms. Eve Fiorucci
Assistant Director – Real Estate
Viad Corp.
1850 North Central Avenue
Phoenix, AZ  85077

Re:  Montgomery Road I Limited Partnership v. Viad Corp.

Dear Ms. Fiorucci:

This letter and Attachment A (collectively, the "Agreement"), documents the understanding between Viad Corp. ("Company") and Grant Thornton LLP ("Grant Thornton LLP", "we" or "us") for certain accounting consultation services, reports and other deliverables defined below (the "Services"). This Agreement also documents Company's agreement to the terms and provisions herein.

## Scope of Services

The scope of our Services is for us to review the facts in this matter and consult with you in areas where you require our assistance. At your request, we will provide a written report covering our procedures and findings. In addition, at your request, we will supply expert testimony at deposition, trial or other hearings. Our report, including summaries, schedules and working papers of any kind generated in connection with our Services, and testimony shall not be used or disseminated for any other purpose without our prior written consent.

Our Services do not constitute a rendering by Grant Thornton LLP or its partners or staff of any legal advice, nor do they include the compilation, review or audit of financial statements. Because our Services are limited in nature and scope, they cannot be relied upon to discover all documents and other information or provide all analyses that may be of importance in this matter. Company will not hold us responsible for any loss or liability that may result from the non-discovery of any matters that might have an influence on this matter.

Grant Thornton LLP shall be obligated only for the Services described in this Agreement and only for changes in such scope that are set forth in writing and duly executed by the parties hereto. Further, Grant Thornton LLP's obligation shall not extend to any subsequent periods for which we are not engaged. To the extent all specific details of the engagement are not so documented, Grant Thornton LLP and Company shall work diligently and in good faith to document them at the request of either party.

We conducted a search for possible conflicts of interest and discussed those results with you. Specifically, we disclosed to you and you acknowledge disclosure of Kirk Rogers' relationship with Reznick Group P.C. We are not aware of any situations that, in our view, constitute a conflict of interest or would inhibit our ability to objectively provide assistance in the above matter. We take no

Tysons Executive Plaza II
2010 Corporate Ridge, Suite 400
McLean, VA 22102-7838
T 703.847.7500
F 703.848.9580
W www.grantthornton.com

Grant Thornton LLP
US member of Grant Thornton International

Ms. Eve Fiorucci
Vlad Corp.
January 30, 2007
Page 2 of 4

# Grant Thornton

responsibility for monitoring other possible conflicts that could arise during the course of the engagement, although we will inform you promptly should any come to our attention.
We understand that all communications between Grant Thornton LLP personnel regarding this engagement and Company personnel, as well as any materials or information developed or received by us pursuant to this Agreement, whether oral or written, may be protected by applicable legal privileges and, therefore, will be treated as confidential. Accordingly, we agree, except as required by applicable law, regulation, court or governmental order or process, or demand of accounting oversight body, not to disclose any of our communications, or any of the information we receive or develop in the course of performing the Services, to any third party apart from such third parties as you may designate. If access to any of the materials in our possession relating to this Agreement is sought by a third party, we will promptly notify you of such action, tender to you our defense in connection with the response to such a request and cooperate with you concerning the response thereto.

**Fees**

You will be invoiced from time to time for our Services at the following hourly rates:

| | |
|---|---|
| Partner | $ 500 |
| Senior Manager/Director | $ 425 |
| Manager | $ 325 |
| Senior | $ 225 |
| Associate | $ 150 - $175 |

Company will pay each bill within 30 days of receipt. We will require a $15,000 retainer prior to starting the work. The retainer will be applied against our last bill for this matter, and the excess of the retainer over the amount of the last bill, if any, will be refunded to you. We will also bill you for our expenses, which include travel expenses (if applicable) and an administrative charge equal to seven percent of our billings to cover items such as computer usage, telephone charges, delivery or courier services, faxes, normal copying, postage, miscellaneous supplies, software licensing cost, and professional literature licensing and use charges.

Payment of our fees is not contingent on the outcome of this matter. We will require full payment of your account before we express any opinion, issue any report or provide any testimony. We may stop work or terminate this engagement at any time in the event of non-payment. Because of the nature of this type of engagement, we may invest a considerable amount of time before generating a report or other deliverable. We may stop work for a number of reasons, including but not limited to, your request or settlement. In the event we stop work, you agree to pay our fees and expenses for all Services performed through the date work is stopped, whether or not we have produced any deliverables.

This engagement includes only the Services. We will bill separately at our standard rates for any costs, expenses and time spent in legal and regulatory matters or proceedings arising from this Agreement, such as subpoenas, testimony, bankruptcy fee filings and consultation involving private litigation, arbitration and/or government or industry regulation inquiries, whether made at your request, the request of a third party or by subpoena or the like. Company shall pay such billings.

Ms. Eve Fiorucci
Vlad Corp.
January 30, 2007
Page 3 of 4

**Grant Thornton**

### Limitation of Liability and Indemnification

With respect to the Services, the liability of Grant Thornton LLP and its present and former partners, principals and employees for any claim, including but not limited to negligence, shall not exceed the fees it receives hereunder for the portion of the work giving rise to such liability. Nor shall Grant Thornton LLP and its present and former partners, principals and employees be liable for any special, consequential, incidental or exemplary damages or loss or any lost profits, taxes, interest, tax penalties, savings or business opportunity. In addition, we will have no liability to Law Firm, Law Firm's Client, or any third party by reason of any action taken or omitted by us in good faith relating to our Services.

Law Firm's Client shall indemnify and hold harmless Grant Thornton LLP and its present and former partners, principals and employees for any liability, damages, fees, expenses and costs (including defense costs) associated with any third-party claim arising from or relating to (i) misrepresentations by Law Firm's Client or (ii) false or incomplete information provided to Grant Thornton LLP in the performance of its Services. The terms of this paragraph and the preceding paragraph shall apply regardless of the nature of any claim asserted (including but not limited to contract, statute, tort, strict liability or any form of negligence, whether of Law Firm, Law Firm's Client, Grant Thornton LLP, or others, except for Grant Thornton LLP's gross negligence or willful misconduct) and whether or not Grant Thornton LLP was advised of the possibility of the damage or loss asserted, but such terms shall not apply to the extent finally determined to be contrary to any applicable law. Such terms shall also continue to apply after any termination of this Agreement and during any dispute between the parties.

### Other Matters

All Services will be rendered under the supervision of qualified staff in accordance with the terms and conditions set forth herein. Grant Thornton LLP makes no other representation or warranty regarding the Services; in particular, and without limitation of the foregoing, any express or implied warranties arising by custom or usage in the profession, and warranties arising by operation of law are expressly disclaimed.

This Agreement sets forth the entire understanding between and among the parties regarding the Services and supersedes all prior and contemporaneous agreements, arrangements and communications and may not be modified or amended except by the mutual written agreement of the parties. If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions.

Please confirm your acceptance of this Agreement (including Attachment A, which is an integral part of the Agreement) by signing below and returning a signed copy to Kirk Rogers along with a check for our retainer, retaining a copy for yourself. We appreciate the opportunity to serve you.

Very truly yours,

GRANT THORNTON LLP

Kirk T. Rogers
Partner

Ms. Eve Fiorucci
Viad Corp.
January 30, 2007
Page 4 of 4

**Grant Thornton**

Enclosure

Accepted and Agreed:

**VIAD CORP.**

_____    Date: _____
Ms. Eve Fiorucci
Assistant Director – Real Estate

Acknowledged and Agreed:

Bryan Cave LLP

_____    Date: _____
Rodney F. Page, Esq.

Grant Thornton

## Attachment A – Additional Terms

The terms in this Attachment A apply to the Agreement dated January 30, 2007 for the Services to be provided by Grant Thornton LLP to Viad Corp. ("Company"). In the event that there is a conflict between the Agreement and this Attachment A, the terms of this Attachment A shall control. Any capitalized terms herein that are undefined shall have the meaning assigned to them elsewhere in the Agreement.

**1. Ability to Perform.** None of the parties to this Agreement shall be liable for any delay or failure in performance due to circumstances beyond its reasonable control. However, it is possible that because of unexpected circumstances we may determine that we cannot complete our Services. If, in our professional judgment, such circumstances exist, we may resign from this engagement prior to completion without incurring any liability to you. In addition, Grant Thornton LLP reserves the right to in whole or in part decline to perform Services if information comes to our attention indicating that performing any Services could cause us to be in violation of applicable law, regulations or standards or in a conflict of interest, or to suffer damage to our reputation.

**2. Standards of Performance.** The parties acknowledge that this engagement will involve analysis, judgment and other performance from time to time in a context where the participation of the parties or others is necessary, where answers often are not certain or verifiable in advance and where facts and available information change with time. Accordingly, evaluation of Grant Thornton LLP's Services shall be based solely on its substantial conformance with any standards or specifications expressly set forth in this Agreement and all applicable professional standards, and any claim of nonconformance (and applicability of such standards) must be clearly and convincingly shown. Unless the parties agree otherwise, in writing, Grant Thornton LLP shall have no responsibility to update any of its work after its completion.

**3. Successors and Affiliates.**
(a) Except to the extent expressly provided hereto to the contrary, no third-party beneficiaries are intended under this Agreement.
(b) This Agreement is binding on each party hereto and on each of its successors, assigns, heirs, legatees and legal representatives.
(c) Company shall, upon request by Grant Thornton LLP from time to time (before or after its completion of the Services), obtain written confirmation by specified parties of their agreement to the terms of this Agreement.
(d) Company shall not assign any rights, obligations or claims relating to this Agreement.

**4. Electronic Communications.** The parties may need to electronically transmit information to each other and to other entities engaged by any of the parties. However, e-mail is not a secure means of communication, and thus confidentiality could be compromised. Company agrees to the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between the parties and between Grant Thornton LLP and outside specialists or other entities engaged by Grant Thornton LLP, or Company. We shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond our reasonable control.

**Grant Thornton**

**5. Outsourcing to Third-Parties.** Grant Thornton LLP is the U.S. member firm of Grant Thornton International ("GTI"), a global organization of member firms in over 100 countries. From time to time, the partners and staff of the member firms may assist in the professional services being rendered. Member firms are not members of one international partnership or otherwise legal partners with each other. There is no common ownership, control, governance, or agency relationship between member firms. Company agrees that information provided by the Company may be disclosed to a member firm or a third-party service provider, including other accounting firms that may not be members of GTI, solely for purposes of performing our professional services.

**6. Hiring of Personnel.** When we lose a valued member of our engagement team, we incur significant expenses in hiring and training replacements. Accordingly, during the term of this engagement and for a period of one (1) year after the Services are completed, Company agrees not to solicit, directly or indirectly, or hire any of our personnel who participate in this engagement without our express written consent. If this provision is violated, Company will pay Grant Thornton LLP a fee equal to the hired person's annual salary in effect at the time of the violation to reimburse the costs of hiring and training replacement personnel.

**7. General**
   (a) The documentation (including the working papers) of the Services is the property of Grant Thornton LLP and constitutes confidential information. We will retain the documentation in accordance with our document retention policies, which may be amended from time to time.
   (b) Each party is an independent contractor with respect to the other and shall not be construed as having a trustee, joint venture, agency or fiduciary relationship.
   (c) Any controversy or claim arising out of or relating to the Services or related fees shall first be submitted to voluntary mediation. A mediator will be selected by agreement of the parties, or if the parties cannot agree a mediator acceptable to all parties will be appointed by the American Arbitration Association. The mediation will proceed in accordance with the customary practice of mediation. In the unlikely event that such differences cannot be resolved by mediation, the parties recognize that the matter will probably involve complex business issues that would be decided most equitably by a judge hearing the evidence without a jury. Accordingly, the parties agree to waive any right to a trial by jury in any action, proceeding or counterclaim arising out of or relating to the Services and the related fees.
   (d) This Agreement, including its formation and the parties' respective rights and duties, and all disputes that might arise from or in connection with this Agreement or its subject matter shall be governed by and construed in accordance with the laws of Illinois, without giving effect to conflicts of laws or rules.

Revision 07 11 06

# Exhibit C

## Montgomery Road I Limited Partnership v. Viad Corp.

### Exhibits for Deposition of Brent Solomon

| Exhibit Number | Document Title or Description |
|---|---|
| 1 | Notice of Deposition for Brent Solomon |
| 2 | Plaintiff's Identification of Expert Witness, including Expert Report and Curriculum Vitae |
| 3 | Draft Letter dated March 8, 2005 from Reznick Group to Sam Rose regarding the terms of the engagement |
| 4 | Letter dated March 24, 2005 from Reid Liffmann to Brent Solomon regarding update on progress of the Reznick analysis |
| 5 | Letter dated February 16, 2005 from Sam Rose to Eve Fiorucci regarding delay in sending information to Reznick Group |
| 6 | Handwritten Notes from meeting on September 13, 2006 with Adam Pignatelli, Dale Cooter and Donna Mangold |
| 7 | Handwritten Notes on Viad Response |
| 8 | Brent Solomon's Handwritten Notes on the Cash Participation Agreement |
| 9 | Handwritten Notes titled "Montgomery Road I Initial Meeting" |
| 10 | Reznick Opinion dated April 10, 2005 |
| 11 | Draft Reznick Opinion with Handwritten Notes |
| 12 | Expert Report dated October 16, 2006 |
| 13 | Draft Memorandum dated December 20, 2004 from Reid Liffmann to File regarding Transportation Leasing (Now Viad) Dispute |
| 14 | Memorandum dated December 20, 2004 from Gerald M. Katz to Reid Liffman regarding G&R/90 K – Transportation Leasing |
| 15 | March 2, 2005 Letter from Eve Fiorucci to Brent Solomon enclosing Statement of TLC's Position |

302239.1

| 16 | Facsimile from Robin-Eve Jasper to Brent Solomon and Craig Birmingham attaching Letter dated August 26, 2005 from Eve Fiorucci to Sam Rose |
| --- | --- |
| 17 | March 30, 2005 Letter from Gerald M. Katz to Brent Solomon enclosing Statement of Greenebaum and Rose Associates, Inc. With Respect to TLC's Position Statement |
| 18 | Cash Participation Agreement |
| 19 | Letter from Dale Cooter to Rodney Page dated November 21, 2006 enclosing Special Purpose Financial statement for December 31, 2005 and 2004 |

302239.1