# EXHIBIT 73

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------x
MONTGOMERY ROAD I             :
LIMITED PARTNERSHIP,          :
                              :
        Plaintiff/            :
        CounterDefendant,     :
                              :
    v.                        :
                              :
VIAD CORP.,                   :
                              : No. 1:06CV00344(HHK)
        Defendant/            :
        CounterPlaintiff,     :
                              :
    v.                        :
                              :
MONTGOMERY ROAD I             :
LIMITED PARTNERSHIP,          :
                              :
        Defendant/            :
        CounterPlaintiff.     :
------------------------------x

Washington, D.C.

Tuesday, February 20, 2007

Deposition of

STEVE HALBERT

a witness, called for examination by counsel for

Plaintiff/CounterDefendant pursuant to notice and

agreement of counsel, beginning at approximately

2:24 p.m. at the law offices of Cooter Mangold

Tompert & Karas, 5301 Wisconsin Avenue, NW,

## Page 38

1   A   Without going back to my computer
2   where I can read the whole thing, I cannot
3   tell what any others are.
4   Q   You said that it would be a normal
5   inquiry in the District to ask whether or not
6   the prices included TDRs. I do see in
7   comp no. 5 that you talk about TDRs. If it
8   would be a normal thing to ask, why would it
9   be a normal question to ask within the
10  District; that is, whether or not the sales
11  price of a piece of property includes TDRs.
12  A   So that we can better understand
13  the transaction, the motivations of buyer and
14  seller, and do a better job for the next
15  client.
16  Q   When you use these particular
17  comps, did you reach an assumption as to
18  whether or not your appraised value as to
19  90 K necessarily included TDRs, the use of
20  TDRs? You may not be able to tell it from
21  this page -- we'll go to it -- but are you
22  able to tell me whether or not your

## Page 39

1   $64 million and change -- 64,800,000 price
2   includes development that would be available
3   only through the use of TDRs?
4   A   That's my recollection, that my
5   unit value of -- whatever it is.
6   Q   Turn to whatever page you want.
7   Tell me where you're going.
8   A   Page 37. My $65 per FAR. And the
9   allowable development, I used 987,000,
10  997,000 square feet, which I think might have
11  been the 10 FAR or the 9.6 -- don't recall.
12  You could calculate it, obviously -- and that
13  then became the total. So TDRs were
14  involved.
15  Q   So your 64,800,000, that number is
16  necessarily dependent on the use of TDRs to
17  develop the site; is that right?
18  A   Yes.
19  Q   Looking at page 37, you have
20  indicated that it's your opinion as of June
21  24th, '06 that the FAR value as of that date
22  in this locale was $65 a foot; is that right?

## Page 40

1   A   That's right.
2   Q   You then multiply that 65, and you
3   stand by that, don't you, the $65?
4   A   Yes.
5   Q   You then multiply this number times
6   997,229. How did you arrive at the 997,000
7   number?
8   A   I would have either used -- and I
9   don't see immediately which way I
10  did -- 10 times the site value because of the
11  maximum allowable, including TDR development
12  potential of 10, or I might have used the 9.6
13  because that's what the developer was
14  planning to do. So the answer is partially
15  either 10 or 9.6 FAR.
16  Q   Now, you're an expert. I want to
17  you to assume a hypothetical for me, if you
18  would. If you need a calculator, we'll get
19  you one. I'll proffer to you that the
20  as-right FAR here is 6.5. I don't think
21  there is a dispute about that in this
22  case -- I want you to take the 6.5, apply a

## Page 41

1   6.5 factor to the site times $65 of TDR -- or
2   not a TDR -- $65 in FAR -- and tell me what
3   that number would be?
4       MR. COOTER: You need a calculator?
5       THE WITNESS: Have you got one
6   handy?
7       MR. COOTER: I believe so.
8       (Discussion off the record)
9       MR. COOTER: Let's go back on the
10  record.
11      BY MR. COOTER:
12  Q   I think what I asked you to do was
13  to calculate -- using what you believed to be
14  the proper FAR value of $65, and a 6.5 FAR as
15  of right, what's -- and however many feet are
16  on this piece -- what would that indicate to
17  you is the value of the ground -- on those
18  assumptions -- the value of 90 K -- not just
19  the ground; the value of the property.
20  A   Mathematically, it comes out to
21  43,888,000 and some change.
22  Q   Now, looking at the methodology of

**42**

1  your report versus the calculation that you
2  just did, what you did was you assumed $65 a
3  foot, per FAR foot, and then multiplied it
4  times 9.6; right?
5     A  Right.
6     Q  To get to 64,800,000.
7     A  Right.
8     Q  There's nothing the matter, as you
9  see it, with doing an arithmetical exercise.
10  I take it -- by taking the FAR foot price,
11  multiplying it times the allowed density and
12  reaching a value conclusion -- I mean,
13  there's nothing the matter with that; right?
14  Because that's what you did.
15     A  As long as it's a
16  mathematical -- something we're playing as
17  opposed to appraising.
18     Q  Well, I don't understand that.
19     A  Then let me clarify if I may.
20     Q  Go ahead.
21     A  It would not be proper appraisal
22  technique to only use 6.5.

**43**

1     Q  Why?
2     A  Because an appraiser takes into
3  account what is readily achievable through a
4  zoning office.
5     Q  Will you confirm for me that
6  essentially what you did is you used 9.6
7  because you assumed that that which was
8  readily achievable were some TDRs?
9     A  Yes.
10     Q  And that if you take the
11  equation -- if you take TDRs out of the
12  equation, that which is achievable is not
13  9.6, but rather, 6.5; right?
14     A  Yes.
15     Q  And then if you do that
16  mathematical exercise, the indicated value
17  is -- what you did you say?
18     A  Call it $44 million -- but that's
19  not good appraisal. And any appraiser who
20  does that would not be doing what he's
21  supposed to be doing.
22     Q  And the reason that you say, I take

**44**

1  it, is that any appraiser who would take into
2  account the value of -- or would take into
3  account the -- what's the word?
4     A  Upside?
5     Q  The upside -- with a possible use
6  of TDRs. Is that right?
7     A  Yes. Another way of looking at
8  that same thought is if the city was in the
9  mood to change from the C3C to a C4 zoning on
10  that site -- had nothing to do with
11  TDRs -- and yet it's formerly C3C and we call
12  the zoning office and they say, yeah, we're
13  very open to rezoning to C4, which allows for
14  10 if those streets widen up,
15  yada-yada-yada, then we would appraise it at
16  the full 10.
17     Q  Now that you've said that, can you
18  confirm for me that there was no such concept
19  on the table as of June the 24th of '06 as to
20  this property? That is, a potential rezoning
21  to C4 or some other higher-density zoning.
22     A  Can neither confirm nor deny.

**45**

1  Don't know the answer.
2     Q  You're not aware of any?
3     A  Correct. I'm not aware. I was
4  only making the example to underscore proper
5  appraisal technique.
6     Q  I understood what you said.
7        Earlier -- somewhere in this
8  appraisal -- and I can find it if I look long
9  enough -- you indicated that you believe that
10  there was an approved project at
11  9.6 FAR -- are you aware of anything like
12  that, a project would have been approved for
13  this site that had been approved at 9.6 FAR?
14     A  The comment on 9.6 -- the answer is
15  no. The comment would have been at the -- in
16  the highest and best use on page --
17     Q  Bless you. Save me some time.
18     A  Page 27. And what it that says
19  actually is the developer reportedly has
20  plans for a 9.6 FAR multi-building
21  development.
22     Q  You don't know if that's true or

Beta Court Reporting
(202) 464-2400    www.betareporting.com    (800) 522-2382