# EXHIBIT 8

LIMITED LIABILITY COMPANY OPERATING AGREEMENT
OF
MONTGOMERY ROAD TDR, LLC

This Limited Liability Company Operating Agreement of Montgomery Road TDR, LLC (the "Company") is made and entered into, effective for all purposes and in all respects as of July 28, 2006, by and among the undersigned members (the "Members").

ARTICLE I
ORGANIZATION

Section 1.1. _Formation_. The Company was formed pursuant to the District of Columbia Limited Liability Company Act of 1994 (the " Act") by the filing of Articles of Organization dated July 28, 2006, with the District of Columbia Department of Consumer and Regulatory Affairs.

Section 1.2. Purposes. The Company is organized to acquire, hold and ultimately sell transfer development rights in the District of Columbia, to engage in activities related thereto, and all other activities permitted under the Act, as may be determined from time to time by the Members.

Section 1.3. Term. The term of the Company began upon the filing of the Articles of Organization, and its existence shall be perpetual, as provided in the Articles of Organization, unless sooner terminated as provided in this Agreement or the Act.

Section 1.4. Principal Office. The principal office of the Company shall be located at 5301 Wisconsin Avenue, N.W., Suite 510 Washington, D.C. 20015. The Company may have such other offices as the Members may designate.

Section 1.5. Registered Agent/Office. The registered agent and registered office of the Company shall be as set forth in the Articles of Organization. The Manager may, in his sole and absolute discretion, change the registered agent of the Company to a person or entity who or which qualifies as a registered agent under the Act.

ARTICLE II
MEMBERSHIP INTERESTS; CAPITAL CONTRIBUTIONS

Section 2.1. Definition of Membership Interest. The term "Membership Interest" means all rights of a Member in the Company, including the right to participate in the management of the Company, and the right to share in all of the profits, losses and distributions from the Company.

Section 2.2. Initial Membership Interests; Capital Contribution. The Members' respective initial Membership Interests and initial capital contributions to the Company are as follows:

| Member | Capital Contribution | Membership Interest |
|---|---|---|
| Reid K. Liffmann | $ 150 | 15% |
| Steven Braesch | $ 150 | 15% |
| SJG Holdings, Inc. | $ 350 | 35% |
| Samuel G. Rose Revocable Trust U/T/A January 18, 2002 | $ 350 | 35% |

MR 07636

Section 2.3. Certificates for Membership Interests. At the option of the Members, Membership Interests may be represented by certificates signed by the Manager.

Section 2.4. Additional Capital/Loans. There shall be no requirement for the Members to make additional contributions to the capital of the Company. The Members shall not have any personal liability for any obligation of the Company. A Member may make a loan to the Company at any time, on such terms as are specified by such Member and the Company.

Section 2.5. Distributions; Interest on Contributions. Distributions of cash flow and capital proceeds shall be paid first to any outstanding loans or related indebtedness of the Company. After all such loans or debts have been fully satisfied, distributions may be paid to the Members as determined by the Members owning a majority of the Membership Interests. All distributions to Members shall be allocated to the Members in proportion to their respective Membership Interests. Members shall not be paid interest on any capital contributions.

Section 2.6. Capital Accounts. A separate capital account shall be maintained for each Member in accordance with the Internal Revenue Code of 1986, as amended.

## ARTICLE III
## MEMBER ACTIONS; MANAGEMENT OF THE COMPANY

Section 3.1. Management of the Company. All decisions of the Company will be made by the Members owning a majority of the Membership Interests. Notwithstanding the foregoing, the implementation of all decisions of the Company shall be performed by a Manager who shall be an individual appointed, removed and/or replaced by a majority interest of the Members. The initial Manager is Samuel G. Rose. The Manager's authority shall be ministerial only, and no Manager shall make any decisions for or on behalf of the Company out of the ordinary course of its business. The Manager shall serve at the pleasure of the Members. The Manager of the Company shall perform such duties as are designated from time to time by the Members.

Section 3.2. Regular Meetings. There shall be no requirement that the Members conduct annual or other regularly scheduled meetings.

Section 3.3. Special Meetings. Special meetings of the Members may be called upon written or oral notice by the Manager or by any Member, for any purposes described in the meeting notice.

Section 3.4. Quorum. Members holding in excess of 50% of the Membership Interests in the Company entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of Members.

Section 3.5. Voting. Every Member entitled to vote at a meeting of Members shall have the right to vote, in person or by proxy, the Interest owned by it. The affirmative vote of Members owning a majority of the Membership Interests (whether or not represented at the meeting) shall be sufficient on any question presented to the Members, except as otherwise provided by the Act or this Agreement.

Section 3.6. Informal Action by Members. Action required or permitted to be taken at a Members' meeting may be taken without a meeting if notice of the proposed action is given to or waived by all Members entitled to vote on the action, and if a consent in writing setting forth

MR 07637

such action is signed by a majority in interest of the Members entitled to vote thereon, and such notices, consents and waivers (as applicable) are filed with the records of the Company.

Section 3.7. Indemnity. Neither a Member nor a Manager shall be liable, responsible, or accountable, in damages or otherwise, to the Company or to any Member or third party for any act performed by the Member or the Manager within the scope of authority conferred upon the Member or Manager by this Agreement or the Act, except to the extent caused by a Member's or Manager's gross negligence or willful misconduct. Each Member and Manager or former Member or Manager of the Company or any person who may have served at the request of the Company as a manager, director, or officer of another company or partnership or corporation in which this Company owns membership or partnership interests or shares of capital stock or of which it is a creditor, including in each case their respective executors and administrators, shall be indemnified by the Company against liabilities, fines, penalties, and claims imposed upon or asserted against him, including amounts paid in settlement, by reason of having been such a Member or Manager, or by reason of performing any act with respect to Company matters, and against all expenses, including counsel fees, reasonably incurred by the indemnified party in connection therewith, except to the extent caused by a Member's or Manager's gross negligence or willful misconduct.

## ARTICLE IV
## ACCOUNTING MATTERS

Section 4.1. Fiscal Year. The annual accounting period of the Company shall be the calendar year.

Section 4.2. Tax Matters Partner. Reid K. Liffmann shall be the tax matters partner for the purposes of Section 6231 of the Internal Revenue Code, as amended (the "Code").

Section 4.3. Tax Elections. The Members, acting through the Manager, shall have the authority to make all elections under the Code.

## ARTICLE V
## ASSIGNABILITY OF INTEREST

Section 5.1. Sale or Transfer of Interest. Members may not sell, assign, transfer, pledge, hypothecate or otherwise dispose of or encumber their Company Interests, and owners of a Member may not dispose of such ownership interest (except by death or incompetency), except by agreement of Members owning more than a fifty percent (50%) Percentage Interest in the Company, or as provided herein. Any act in violation of this section shall be void as against the Company. If a Member desires to sell or otherwise transfer his Interest (the "Selling Member"), he or it shall first give written notice (the "Offer Notice") to the other Members (the "Offeree Members"), setting forth the terms under which the Selling Member is willing to sell his or its Interest. For a period of thirty (30) days following receipt of the Offer Notice (the "Offer Period"), the Offeree Members shall have the right to elect to acquire the Selling Member's Interest, on the terms set forth in the Offer Notice. Such election shall be made by written notice to the Selling Member and the other Offeree Members given prior to the end of the Offer Period. Each Offeree Member may offer to purchase all or any portion of the Selling Member's Interest. If the Offeree Members offer to purchase more than One Hundred Percent (100%) of the Selling Member's Interest on the terms set forth in the Offer Notice, then the purchasing Offeree Members will have the right to purchase the Selling Member's Interest pro rata in proportion to the purchasing Offeree Members☐ respective Interests. If the Offeree Members do not offer to acquire all of the Selling Member's Interest, for a period of one hundred twenty (120) following

MR 07638

the expiration of the Offer Period, the Selling Member will have the right to sell any remaining portion of his or its Interest to a third party, on terms, taken as a whole, no more favorable to the purchaser than those set forth in the Offer Notice. If a sale to a third party does not close within said 120-day period, then no sale or other transfer may take place without issuing a new Offer Notice and offering the Selling Member's Interest to the Offeree Members as set forth in this Section 6.2(a).

Section 5.2. Sale or Transfer to Related Entities. Notwithstanding the foregoing, any Member, or any owner of a Member, shall be permitted to make transfers to family trusts or partnerships for family members for estate planning purposes. Any transfers to these types of entities shall not affect the provisions of this Agreement which shall continue to govern the Interests of each Member in the Company.

Section 5.3. Further Restrictions on Sale or Transfer. Notwithstanding anything contained in this Agreement to the contrary, it is expressly understood and agreed that no transfer of any Interest in the Company (or any part thereof), and no substitution of a Member, shall be permitted under any circumstances whatsoever if such transfer, and/or substitution, would, or could, (i) jeopardize the partnership status of the Company for Federal and state income tax purposes, or (ii) violate or cause the Company to violate, any state or Federal securities law or any other applicable law or governmental rule or regulation.

## ARTICLE VI
## DISSOLUTION

Section 5.1. Dissolution. The Company shall be dissolved upon the earliest to occur of (i) the unanimous vote of the Members, and (ii) any event which, pursuant to the Act, causes the dissolution of a limited liability company.

Section 5.2. Winding-Up. If the Company is dissolved, the Members shall wind up its affairs in accordance with the Act.

## ARTICLE VII
## APPLICABLE LAW

Section 6.1. Applicable Law. This Agreement shall be interpreted in accordance with, and governed by, the laws of the District of Columbia.

## ARTICLE VIII
## WAIVER OF CONFLICT

Section 7.1 Representation; Waiver of Conflicts. The Members acknowledge that the law firm of Shapiro, Lifschitz and Schram, P.C. (the "Firm") has represented, presently represents, and may in the future represent some or all of the Members and their Affiliates in their separate capacities. Inasmuch as the Firm is presently representing the Company and may represent the Company as well as the Interests of certain individual Members and their Affiliates in connection with future transactions, potential conflicts of interests may be created by the Firm's representation of the various Members and the Company. Although there are no conflicts or disputes presently existing between the Company and the Members, or among the Members themselves, there is the potential that such conflicts may arise in the future. By signing this Agreement, the parties acknowledge that these potential conflicts have been disclosed, and that they have had ample opportunity to discuss these conflicts with the Firm and

MR 07639

with separate legal counsel. Subject to the terms set forth below, the parties hereto waive any rights they may have now or in the future to protest or object to the Firm's representation of the Company, any one or more of the Members, or Affiliates of the foregoing. In the event that any court of competent jurisdiction finally determines that the Firm's representation of the Company, any Member, or any Affiliate of any of the foregoing, results in a conflict of interest that may not be waived, the Firm reserves the right to withdraw from such representation without prejudice to its rights to continue to represent the Company, any Member, or any Affiliates of the foregoing on other matters. Alternatively, the Firm may withdraw from its representation of all parties in connection with matters pertaining to such dispute. The Firm is an express, intended third party beneficiary of this Section 8.19.

IN WITNESS WHEREOF, the Members have executed and delivered this Limited Liability Company Operating Agreement effective as of the date first written above.

Members:

_____
Reid K. Liffmann

_____
Steve Braesch


SJG Holdings, Inc.

By: _____
Stewart J. Greenebaum, President


Samuel G. Rose Revocable Trust U/T/A Dated January 18, 2002

By: _____
Samuel G. Rose, Trustee


F:\Clients\421\14\Op Agmt.Montgomery Rd TDR LLC.doc

Page 5

MR 07640