**EXHIBIT 49**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONTGOMERY ROAD I LIMITED PARTNERSHIP, | ) ) ) |
| Plaintiff/ Counter-Defendant, | ) ) ) |
| v. | ) ) ) Case No. 1:06CV00344 (HHK) |
| VIAD CORP, | ) ) ) |
| Defendant/ Counter-Plaintiff/ Third-Party Plaintiff | ) ) ) ) |
| v. | ) ) |
| MONTGOMERY ROAD TDR, LLC, | ) ) |
| Third-Party Defendant | ) ) |

**DECLARATION OF RONALD GLASSMAN IN SUPPORT OF
MONTGOMERY ROAD I LIMITED PARTNERSHIP AND MONTGOMERY ROAD TDR'S
OPPOSITION TO VIAD'S RENEWED MOTION FOR SUMMARY JUDGMENT**

I, Ronald Glassman, declare and state under the laws of perjury of the State of Maryland as follows:

1. I am over the age of 18 and am competent to testify to the matters contained herein, which are made from my personal knowledge. I am the Financial Vice President of Greenebaum & Rose Associates ("G&R"). I am a Certified Public Accountant, not a bookkeeper as stated in Viad's SOF 163, and have been licensed in the State of Maryland since 1975. I have been employed by G&R since June 1987. I was responsible for the tax and accounting

work for G&R from 1987 through 2002. I now work on special projects for G&R and its affiliated entities.

2. In the course of my work for G&R during the period 1987-2002, I was also responsible for the tax and accounting work for various affiliated entities, including Montgomery Road I Limited Partnership ("Montgomery Road") and S&S Finance Limited Partnership ("S&S Finance"). I continued to be responsible for the tax and accounting work for Montgomery Road from 2003 to the present.

3. I am familiar with the Cash Participation Agreement which was entered into between Montgomery Road and Transportation Leasing Co. ("Transportation Leasing") at the time of the purchase of 90 K Street in 1987.

4. Until filing its Counterclaim in this litigation, neither Viad nor Transportation Leasing had ever asserted that Montgomery Road had breached Section 2.6 of the Cash Participation Agreement because it had not provided an unqualified opinion of its outside accountant to accompany the Special Purpose Financial Statements for the 90 K Street Property.

5. In response to Defendant Viad's assertion in this litigation, Montgomery Road engaged its outside accountant, KAWG&F, P.A., to perform several audits of Montgomery Road's financial statements relating to the 90 K Street Property.

6. To perform the audits, KAWG&F, P.A. had to examine financial records and transactions spanning a period of twenty years. As Montgomery Road's in-house accountant, I was involved in supplying the requested records and information to KAWG&F, P.A.

7. On June 20, 2007, KAWG&F, P.A. completed its audits of the financial statements and its examination of the financial records related to the 90 K Street Property. Attached to my Supplemental Declaration dated June 26, 2007 were Special Purpose Financial Statements, accompanied by the unqualified opinion of KAWG&F, P.A.. See Exhibits B-D, Supplemental Filing, June 27, 2007 [ECF #42].

8. As set forth in the Declaration of Clemens Mueller, dated September 6, 2007 (Exhibit 48), the audit was performed in accordance with Generally Accepted Auditing Standards (GAAS). Clemens W. Mueller, a shareholder of KAWG&F, P.A., personally supervised and reviewed the audit. The fee charged by KAWG&F, P.A. for the audit was $34,500.

9. In response to Viad's SOF 163, my interface with KAWG&F, P.A. was similar as it had been for the unaudited statements, and as I had described in my deposition. Although I prepared the statements, they were provided to KAWG&F, P.A. for audit. As I had previously provided KAWG&F, P.A. with information necessary to compile the unaudited statements, I also

provided them with all materials requested by them so that the statements could be audited. As a result of the audit, KAWG&F, P.A. directed me to make various changes in the statements to bring them into compliance with GAAP. (When we prepared the unaudited statements, they would also give me changes.) The language of the unqualified opinion accompanying the statements was drafted by KAWG&F, P.A. I did not draft the language, nor was it drafted at my direction. Similarly, I never drafted any of their opinions, and they would always give me the language for the revisions needed from year to year.

    10.   In SOF 164, Viad asserts:

> In the Supplemental Filing, MRLP has for the first time increased the value of "Land" from approximately $7.3 million to over $11 million. When 90 K Street was purchased in 1987, it was acquired in exchange for land located in Howard County, Maryland that was owned by the partnership. In every special purpose financial statement previously prepared by MRLP, the "Land" asset of 90 K Street was carried on the balance sheet at its purchase price ($10.3 million), plus settlement costs ($766,000) and reduced by the excess value received over the basis of the property of the exchanged property ($3.7 million). This resulted in the "net cost of the land on the partnership's books" of just over $7.3 million. This treatment was logical and in accordance with general accounting, and MRLP has reported this value for the land for nearly 20 years, through annual submissions to Viad. (Ex. 35).

    11.   Although Viad may have found the treatment "logical and in accordance with general accounting," the change on the Balance Sheet from $7.3 million to $11 million was made to bring the statements into compliance with GAAP. The $7.3 million value,

4

which resulted from the tax treatment for purposes of the exchange could not be reflected on the Balance Sheet of the audited statements and be in compliance with GAAP. In any event however, the "Schedule of Investment in the Property" always carried the "Total Cost of Property" at $11 million, not $7.3 million. See, e.g., Special Purpose Financial Statements, December 31, 2000 and 1999 (Exhibit 40 to Viad Memo.) compare page 2 (Special Purpose Statement of Assets and Liabilities) with page 5 (Schedule of Investment in the Property). Therefore, the revision in the Balance Sheet has no effect on the calculation of Developer's Equity and Appreciation Cash Flow.

12. In SOF 166, Viad asserts that "MRLP has eliminated or renamed several line items previously found on the partnerships' balance sheets." MRLP has renamed the category entitled "Project Costs" to the new name of "Land Improvements." The name change was at the direction of KAWG&F, PA. The reduction in the amount previously listed in this category resulted from the fact that, to comply with GAAP, approximately $800,000 of Project Costs had to be expensed, as well as the removal of TDR costs as explained below. This left approximately $140,000 of Land Improvements on the Balance Sheet under the new category "Land Improvements." Regardless of the changes however, the same total amounts are still reflected in the calculation of Developers Operating Equity and developers invested equity, except for the TDR costs of

approximately $300,000. The TDR costs have been removed from the Balance Sheet and the Schedule of Investment in Property because the TDR's are not considered Property under the CPA, as set forth in ¶21 of the Declaration of Steven Braesch.

I swear under the penalties of perjury of the State of Maryland that the facts set forth above are true and correct and made from my personal knowledge.

Executed under the penalties of perjury in Baltimore County, Maryland on the 27th day of September, 2007.

*Ronald Glassman*
Ronald Glassman